Filed 6/27/13; pub. order 7/23/13 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

ALEXANDRA AVERY et al.,

    Plaintiffs and Respondents,

      v.

INTEGRATED HEALTHCARE
HOLDINGS, INC., et al.,

    Defendants and Appellants.

G046202

(Super. Ct. No. 30-2009-00274060)

O P I N I O N

Appeal from an order of the Superior Court of Orange County, Nancy Wieben Stock, Judge.  Affirmed.

Sheppard, Mullin, Richter & Hampton, Richard J. Simmons, Derek R. Havel and Daniel J. McQueen for Defendants and Appellants.

Cotchett, Pitre & McCarthy, Niall P. McCarthy, Justin T. Berger, Eric J. Buescher; Coughlin Law Firm, Frank J. Coughlin, Kim-Thao T. Le; Jerry K. Cimmet;

Law Offices of John M. Kelson, John M. Kelson; and Gerald M. Werksman for Plaintiffs and Respondents.

*      *      *

Defendants and appellants appeal from an order denying their motions to compel plaintiffs and respondents to individually arbitrate the wage and hour claims they allege in this class action.[1]  Integrated relies on an arbitration policy contained in an employee handbook issued by Tenet Healthcare Corporation (Tenet), the previous owner of the four hospitals where Plaintiffs work, and a revised arbitration policy Integrated issued as part of a new employee handbook.  Integrated contends Plaintiffs agreed to the arbitration policy by signing various documents acknowledging and agreeing to the policy.

We affirm the trial court's decision denying Integrated's motions because Integrated failed to establish Plaintiffs agreed to the specific arbitration agreement Integrated submitted to the trial court.  Initially, we conclude Integrated is limited to the arbitration policy contained in the employee handbook issued by the prior owner of the hospitals because Integrated issued the revised employee handbook and arbitration policy *after* Plaintiffs' claims accrued and the original class action complaint was filed.

Substantial evidence in the record establishes one Plaintiff did not sign any document acknowledging or agreeing to the original arbitration policy.  Moreover, she did not impliedly agree to that policy by continuing to work at the hospitals because she did not receive notice of its existence.  As for the other seven Plaintiffs, Integrated

---

[1]     Defendants and appellants are Integrated Healthcare Holdings, Inc., WMC-SA, Inc., Chapman Medical Center, Inc., Coastal Communities Hospital, and WMC-A, Inc.  We will refer to them collectively as Integrated.

Plaintiffs and respondents are (1) Maileen Aguilar, (2) Alexandra Avery, (3) Gwendolyn B. Cade, (4) Ruth Calderon, (5) Jaimie Ann Gebler, (6) Denise Nolfo, (7) Julie Ross, and (8) Minoosh Zarrinnegar.  We will refer to them individually by their last names and collectively as Plaintiffs.

2

submitted a confusing patchwork of acknowledgments and other forms these Plaintiffs signed, but none of these documents refer to the specific employee handbook Integrated filed as the source of the arbitration policy. To the contrary, the documents Plaintiffs signed either refer to an entirely different document as the source of the arbitration policy or fail to meet the legal standards for incorporating by reference an arbitration policy or other document. Without sufficient evidence of the actual arbitration policy to which Plaintiffs agreed when they signed the acknowledgments and other documents, we may not enforce the policy against Plaintiffs.

I

FACTS AND PROCEDURAL HISTORY

In March 2005, Integrated acquired the following four hospitals from Tenet: (1) Western Medical Center – Santa Ana (Western Med Santa Ana); (2) Chapman Medical Center (Chapman); (3) Western Medical Center – Anaheim (Western Med Anaheim); and (4) Coastal Communities Hospital (Coastal; collectively Hospitals). Calderon, Gebler, Ross, and Zarrinnegar each worked at one of these Hospitals both before and after Integrated acquired them. Aguilar, Avery, Cade, and Nolfo each worked at one of these Hospitals only after Integrated acquired them. Avery worked at Western Med Santa Ana; Aguilar, Nolfo, and Ross worked at Chapman; Cade, Calderon, and Zarrinnegar worked at Coastal; and Gebler worked at Western Med Anaheim. All Plaintiffs still work at one of these Hospitals except Aguilar and Avery.

Before or during their employment at the Hospitals, each Plaintiff except Cade signed at least two of the following documents agreeing to arbitrate claims relating to their employment under an alternative dispute resolution process called the "Fair Treatment Process": (1) the "Employee Acknowledgment Form"; (2) the "Application

3

for Employment"; and (3) the so-called "'New Hire'" or "Transition Letter."'[2] According to Integrated, "[t]he details of the arbitration policy (called the Fair Treatment Process, or FTP)" were set forth in Tenet's employee handbook, which Integrated adopted as its own when it acquired the Hospitals (Tenet Employee Handbook). Cade did not sign any of these documents or any other document referring to the Fair Treatment Process or arbitration.

Avery, Calderon, Gebler, Ross, and Zarrinnegar each signed the Employee Acknowledgment Form, which stated "I acknowledge that I have received a copy of the Tenet Employee Handbook and Standards of Conduct and that I understand that they contain important information about the company's general personnel policies and about my privileges and obligations as an employee. . . . [¶] . . . [¶] In addition, I acknowledge that I have received a copy of the Tenet Fair Treatment Process brochure. I hereby voluntarily agree to use the Company's Fair Treatment Process and to submit to final and binding arbitration any and all claims and disputes that are related in any way to my employment or the termination of my employment with Tenet. I understand that final and binding arbitration will be the sole and exclusive remedy for any such claim or dispute against Tenet or its parent, subsidiary or affiliated companies and entities, and each of its and/or their employees, officers, directors or agents, and that, by agreeing to use arbitration to resolve my dispute, both the Company and I agree to forego any right we each may have had to a jury trial on issues covered by the Fair Treatment Process. . . ."

---

[2] We quote the relevant provisions of these documents in the following paragraphs. We acknowledge some Plaintiffs signed slightly different versions of these documents. The differences between the versions are minor and in no way affect our analysis. For example, the Applications for Employment signed before Integrated acquired the Hospitals refer to "Tenet" while the ones signed after the acquisition refer to "IHHI." No one disputes Integrated's standing to enforce the documents referring to Tenet.

4

The Employee Acknowledgment Form further stated (1) the arbitration would be conducted under the Federal Arbitration Act and the American Arbitration Association's procedural rules; (2) the "Company" agreed to submit any dispute it had with the employee to final and binding arbitration; and (3) the maximum amount the employee would be responsible to pay toward the arbitrator's fees and administrative costs.

Aguilar, Avery, Calderon, Nolfo, and Ross each signed the Application for Employment, which included the following statement immediately above the signature line: "I understand that any and all disputes regarding my employment with Tenet, including any disputes relating to the termination of my employment, are subject to the Tenet Fair Treatment Process, which includes final and binding arbitration, and I also understand and agree, as a condition of employment and continued employment, to submit any such disputes for resolution under that process, and I further agree to abide by and accept the decision of the Arbitration panel as the final binding decision and resolution of any disputes I may have."

Approximately two months after Integrated acquired the Hospitals, it sent employees the Transition Letter explaining their employment with Tenet would formally end on a specified date in May 2005, but Integrated "is offering you employment on the terms set forth below. [¶] . . . [Integrated] and you agree to utilize the existing Open Door Policy and Fair Treatment Process, as hereby amended to substitute [Integrated] for Tenet, to resolve any and all disputes related to your future employment. . . . [¶] In order to confirm your acceptance of employment with [Integrated], we request that you sign this letter in the spaces provided below and return an executed original of this letter to the Human Resources Department . . . . In any event, your commencement of work after [the date specified] shall constitute your acceptance of the terms and conditions set forth above." Aguilar, Calderon, Gebler, Nolfo, and Zarrinnegar each signed and returned this

5

letter. Integrated presented no evidence showing Avery, Ross, or Cade received this letter or that Integrated attempted to send the letter to these three Plaintiffs.

In June 2009, Avery filed a class action complaint against Integrated on behalf of all employees at the Hospitals who worked 12-hour shifts without receiving proper overtime wages. Four months later, Integrated unilaterally issued a new version of the Tenet Employee Handbook (Integrated Employee Handbook) without notifying Plaintiffs or any other employees. The Integrated Employee Handbook renamed the Fair Treatment Process the "Alternative Dispute Resolution Process" and added a provision waiving the employee's right to join his or her claims with other employees' claims or bring a class or representative action against Integrated.[3] Integrated contends it made no other significant changes to the Fair Treatment Process.

In January 2010, Aguilar, Nolfo, and Ross filed a separate class action complaint against Integrated on behalf of all employees at the Hospitals who worked 12-hour shifts without receiving proper overtime wages. The parties thereafter agreed to consolidate the two actions and Aguilar, Avery, Nolfo, and Ross filed a consolidated complaint setting forth their claims in a single pleading. In June 2010, Plaintiffs filed a first amended consolidated class action complaint adding Cade, Calderon, Gebler, and Zarrinnegar as plaintiffs. This amended complaint alleged the following claims against Integrated: (1) unfair competition; (2) failure to pay appropriate overtime wages; (3) failure to provide meal and rest periods; (4) failure to pay wages when due; and (5) failure to provide accurate wage statements.

In July 2010, Integrated filed eight motions seeking to compel each Plaintiff to separately arbitrate their claims on an individual basis based on the Fair

_____

[3] Specifically, this provision stated, "[B]oth you and the facility forego and waive any right to join or consolidate claims in arbitration with others or to make claims in arbitration as a representative or as a member of a class or in a private attorney general capacity, unless such arbitration procedures are agreed to by all parties to the arbitration."

Treatment Process described in the Tenet Employee Handbook and the Alternative Dispute Resolution Process set forth in the Integrated Employee Handbook. Plaintiffs opposed the motions on numerous grounds, including (1) the Fair Treatment Process and Alternative Dispute Resolution Process excluded Plaintiffs' nonwaivable statutory claims from their terms; (2) the class arbitration waiver was invalid and unenforceable; (3) Integrated waived its right to compel arbitration; and (4) the Fair Treatment Process and Alternative Dispute Resolution Process were unconscionable. Plaintiffs also pointed out the employee handbook and Fair Treatment Process Integrated submitted with the motions applied to Western Med Santa Ana only and none of Plaintiffs worked at that Hospital except Avery. Finally, Cade argued she never signed any document acknowledging or agreeing to the Fair Treatment Process, Alternative Dispute Resolution Process, or any other arbitration policy.

The trial court denied all motions, finding Integrated "failed to meet [its] burden to show that any of the Plaintiffs are subject to an enforceable arbitration agreement." The court explained Integrated failed to present sufficient evidence establishing an enforceable arbitration agreement between the parties and the Fair Treatment Process and Alternative Dispute Resolution Process Integrated presented were nonetheless unconscionable. Integrated timely appealed.

II

DISCUSSION

A.  *Relevant Legal Principles Regarding Compelling Arbitration*

Both the California Arbitration Act (Code Civ. Proc., § 1280 et seq.) and the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) recognize ""arbitration as a speedy and relatively inexpensive means of dispute resolution"' and are intended "'to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing.'" [Citation.]"

7

(*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1204; *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. \_\_\_, \_\_\_; 131 S.Ct. 1740, 1745 (*AT&T Mobility*).)  The fundamental policy underlying both Acts "is to ensure that arbitration agreements will be enforced *in accordance with their terms*."  (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 836, fn. 10, original italics; *AT&T Mobility*, at p. 1748.)

Arbitration is therefore a matter of contract.  (*Sparks v. Vista Del Mar Child & Family Services* (2012) 207 Cal.App.4th 1511, 1517-1518 (*Sparks*).)  The "'"'". . . policy favoring arbitration cannot displace the necessity for a voluntary *agreement* to arbitrate.'"  [Citation.]  'Although "[t]he law favors contracts for arbitration of disputes between parties" [citation], "'there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate . . . .'"  [Citations.]'"  [Citation.]  "Absent a clear agreement to submit disputes to arbitration, courts will not infer that the right to a jury trial has been waived."  [Citation.]'  [Citation.]"  (*Id.* at p. 1518, original italics.)

Code of Civil Procedure section 1281.2 requires a trial court to grant a petition to compel arbitration "if [the court] determines that an agreement to arbitrate the controversy exists."  (Code Civ. Proc., § 1281.2.)  Accordingly, "'when presented with a petition to compel arbitration the trial court's first task is to determine whether the parties have in fact agreed to arbitrate the dispute. . . .'  [Citation.]"  (*Gorlach v. Sports Club Co.* (2012) 209 Cal.App.4th 1497, 1505 (*Gorlach*); see also *Sparks*, *supra*, 207 Cal.App.4th at p. 1517.)  "A party seeking to compel arbitration has the burden of proving the existence of a valid agreement to arbitrate.  [Citations.]  Once that burden is satisfied, the party opposing arbitration must prove by a preponderance of the evidence any defense to the petition.  [Citations.]"  (*Sparks*, at p. 1518.)

Although the FAA preempts any state law that stands as an obstacle to its objective of enforcing arbitration agreements according to their terms, such as a rule

8

requiring classwide arbitration (see *AT&T Mobility*, *supra*, 131 S.Ct. at p. 1748), we apply general California contract law to determine whether the parties formed a valid agreement to arbitrate their dispute (*Sparks*, *supra*, 207 Cal.App.4th at p. 1518; see also *Gorlach*, *supra*, 209 Cal.App.4th at p. 1505). "General contract law principles include that '[t]he basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting. [Citations.] . . .' [Citation.]" (*Mitri v. Arnel Management Co.* (2007) 157 Cal.App.4th 1164, 1170 (*Mitri*).) Contract law also requires the parties agree to the same thing in the same sense. (Civ. Code, §§ 1550, 1565, 1580; *Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 811 (*Weddington*).)

"There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed. [Citations.]" (*Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425.) Interpreting a written document to determine whether it is an enforceable arbitration agreement is a question of law subject to de novo review when the parties do not offer conflicting extrinsic evidence regarding the document's meaning. (*24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1212 (*24 Hour Fitness*).) Here, both the substantial evidence and de novo standards apply.

Integrated's motion to compel Cade to arbitrate her claims is governed by the substantial evidence standard because the motion turned on conflicting evidence regarding whether Cade received and agreed to Integrated's arbitration policy. (*Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416, 421-422 (*Craig*); see also *Metters v. Ralphs Grocery Co.* (2008) 161 Cal.App.4th 696, 701.) Integrated's motions to compel the other seven Plaintiffs to arbitrate their claims are governed by the de novo standard because the issue turned on whether the documentation Integrated submitted set forth an enforceable arbitration provision. (*Mitri*, *supra*, 157 Cal.App.4th at pp. 1169-1170;

9

*24 Hour Fitness*, *supra*, 66 Cal.App.4th at p. 1212.)  The parties did not submit conflicting extrinsic evidence regarding the documentation's meaning.

B.    *Integrated May Not Apply the Alternative Dispute Resolution Process in the 2009 Employee Handbook to Plaintiffs' Claims*

Integrated sought to compel Plaintiffs to individually arbitrate their claims based on two arbitration agreements:  (1) the Fair Treatment Process in the Tenet Employee Handbook, and (2) the Alternative Dispute Resolution Process in the Integrated Employee Handbook.  We conclude Integrated is limited to the Fair Treatment Process because (1) it issued the Integrated Employee Handbook and its Alternative Dispute Resolution Process *after* Plaintiffs' claims accrued, and (2) it failed to notify Plaintiffs or any other employees about the Integrated Employee Handbook.

Four months after Avery filed her initial class action complaint, Integrated unilaterally modified the Fair Treatment Process in the Tenet Employee Handbook by renaming it the Alternative Dispute Resolution Process and adding a class arbitration waiver.  Integrated modified the Fair Treatment Process based on a provision that authorized the employer to "change or modify the FTP procedures from time-to-time without advance notice and without the consent of employees."  Integrated posted the Integrated Employee Handbook containing the Alternative Dispute Resolution Process on its intranet page, but it did not provide employees with a copy of the new handbook, instruct employees to review the new handbook on the intranet page, or even notify employees of the new handbook's existence.

An arbitration agreement between an employer and an employee may reserve to the employer the unilateral right to modify the agreement.  (*24 Hour Fitness*, *supra*, 66 Cal.App.4th at pp. 1214-1215.)  But the covenant of good faith and fair dealing implied in every contract requires the employer to exercise that right fairly and in good faith so as not to deprive the employee of his or her reasonable expectations under the agreement.  (*Ibid*.; see also *Digerati Holdings, LLC v. Young Money Entertainment, LLC*

10

(2011) 194 Cal.App.4th 873, 885 ["Every contract contains an implied covenant of good faith and fair dealing providing that no party to the contract will do anything that would deprive another party of the benefits of the contract. [Citations.] The implied covenant protects the reasonable expectations of the contracting parties based on their mutual promises"].) Accordingly, an employer may not make unilateral changes to an arbitration agreement that apply retroactively to "accrued or known" claims because doing so would unreasonably interfere with the employee's expectations regarding how the agreement applied to those claims. (*Peleg v. Neiman Marcus Group, Inc.* (2012) 204 Cal.App.4th 1425, 1465 (*Peleg*).) Similarly, the employer must give the employee reasonable notice regarding changes the employer makes so the employee is aware of his or her rights under the agreement. (*Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 706-708 (*Serpa*).) Both of these rules prevent Integrated from applying the Alternative Dispute Resolution Process to Plaintiffs' claims.

Integrated contends these rules exempt only Avery's claims from the Alternative Dispute Resolution Process because all other Plaintiffs filed their judicial complaints and joined this action after Integrated issued the Integrated Employee Handbook. Integrated is mistaken. The implied covenant prevents Integrated from applying the Alternative Dispute Resolution Process to all claims that accrued before Integrated issued the new handbook. The critical point in time is when the claims accrued, not when the employee filed his or her judicial complaint. (*Peleg*, *supra*, 204 Cal.App.4th at p. 1465.) All Plaintiffs allege Integrated engaged in the conduct giving rise to their claims before it issued the Alternative Dispute Resolution Process. Consequently, the Alternative Dispute Resolution Process does not apply because Plaintiffs' claims had accrued by the time Integrated issued the change.[4]

---

4       Integrated's argument also ignores that the initial complaint Avery filed before Integrated issued the Alternative Dispute Resolution Process was a class action complaint filed on behalf of employees at all four Hospitals. Accordingly, the claims of

11

Integrated also argues we should apply the Alternative Dispute Resolution Process to Plaintiffs' claims because its class arbitration waiver simply made explicit what the United States Supreme Court's decision in *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.* (2010) 559 U.S. 662, ___ [130 S.Ct. 1758, 1773] already required, that is, the parties to an arbitration agreement must arbitrate their claims on an individual basis unless they expressly agree to classwide arbitration. This argument misses the point. Regardless of what changes an employer makes to an arbitration agreement, it may not apply those changes to existing claims or without giving employees reasonable notice of the changes. Whether the law already requires the changes Integrated sought to impose is irrelevant to whether it could apply them to existing claims.[5]

Finally, Integrated argues we should sever the class arbitration waiver provision and apply the remainder of the Alternative Dispute Resolution Process if we find Integrated improperly added the waiver. This argument also misses the point. Plaintiffs' claims against Integrated are governed by the arbitration agreement that existed at the time the claims accrued. Integrated, however, relies on a revised agreement it issued after the claims accrued. Simply put, the revised agreement is irrelevant because Integrated may not apply it retroactively to claims that existed before the revision was imposed. (See *Peleg*, *supra*, 204 Cal.App.4th at p. 1465.)

---

all Plaintiffs' were on file before Integrated issued the Alternative Dispute Resolution Process. Applying that process and its class arbitration waiver to claims of all Plaintiffs except Avery would allow Integrated to unilaterally limit an existing action by modifying its employee handbook. The implied covenant of good faith and fair dealing prevents Integrated from doing so. (*Peleg*, *supra*, 204 Cal.App.4th at p. 1465.)

[5]     Of course, the inapplicability of the Alternative Dispute Resolution Process and its class arbitration waiver to Plaintiffs' claims do not prevent Integrated from arguing the *Stolt-Nielsen* decision prevents classwide arbitration of Plaintiffs' claims. We do not address what the *Stolt-Nielsen* case requires because we affirm the trial court's ruling based on Integrated's failure to establish an enforceable arbitration agreement existed.

Accordingly, Integrated's motions to compel Plaintiffs to arbitrate their claims must succeed or fail based solely on the Fair Treatment Process set forth in the Tenet Employee Handbook.

C.      *Cade Never Agreed to Arbitration*

Integrated concedes Cade did not sign an arbitration agreement, but nonetheless argues Cade must arbitrate her claims because she had an implied-in-fact arbitration agreement that applied to all claims regarding her employment. According to Integrated, the Tenet Employee Handbook required all employees to arbitrate any claims against Integrated as a condition of their employment, and therefore Cade implicitly agreed to arbitration by continuing to work for Integrated after she received the Tenet Employee Handbook. We disagree because substantial evidence supports the trial court's finding Cade did not receive the Tenet Employee Handbook.

"California law permits employers to implement policies that may become unilateral implied-in-fact contracts when employees accept them by continuing their employment." (*Asmus v. Pacific Bell* (2000) 23 Cal.4th 1, 11; see also *Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 620 (*Schachter*) ["An 'employee who continues in the employ of the employer after the employer has given notice of changed terms or conditions of employment has accepted the changed terms and conditions'"].) A unilateral, implied-in-fact arbitration agreement may be enforced against an employee to require the employee to arbitrate all claims against his or her employer. (*Craig*, *supra*, 84 Cal.App.4th at p. 420.)

In *Craig*, the employee worked for the employer for several years before the employer established a dispute resolution policy that required all employees to arbitrate disputes regarding their employment. The employer established the policy and made it a condition of employment by sending its employees a memorandum and brochure emphasizing all future disputes with the employer would be resolved through

13

binding arbitration and explaining the arbitration procedures. Four years later, the employee sued the employer claiming it wrongfully terminated her employment. The employer petitioned the court to compel arbitration and presented evidence showing it twice mailed the memorandum and brochure establishing the arbitration policy to the employee at her home address. The employee opposed the petition, arguing she never agreed to the arbitration policy and never received the memorandum and brochure establishing the policy. The trial court granted the petition based on its factual finding the employee continued working for the employer after receiving the memorandum and brochure. (*Craig*, *supra*, 84 Cal.App.4th at pp. 419-420.) The Court of Appeal affirmed. (*Id*. at p. 423.)

The *Craig* court explained general contract law principles governed whether the parties entered into a binding arbitration agreement and therefore the employee's acceptance of the arbitration policy "may be express [citations] or implied-in-fact where, as here, the employee's continued employment constitutes her acceptance of an agreement proposed by her employer." (*Craig*, *supra*, 84 Cal.App.4th at p. 420.) Because substantial evidence supported the trial court's factual finding the employee continued working for the employer after receiving the arbitration policy, the appellate court concluded the employee and employer had an implied-in-fact arbitration agreement. (*Id*. at pp. 421-422.)

Unlike *Craig*, Integrated failed to present any evidence showing it sent or otherwise provided Cade a copy of the Tenet Employee Handbook containing the Fair Treatment Process. As stated above, Integrated concedes Cade did not sign an Employee Acknowledgment Form, Application for Employment, Transition Letter, or any other document acknowledging she received the Tenet Employee Handbook or otherwise agreeing to the Fair Treatment Process.[6] The only documents Integrated presented

---

6      After Cade filed her trial court opposition stating she never signed an Application for Employment or received a Tenet Employee Handbook, her supervisor

14

specifically relating to Cade are (1) a "General Orientation" form Cade signed listing 14 broad topics on which she "received information and instruction" during her employee orientation when she started working at Coastal, and (2) an unsigned "Personnel File Checklist" listing 35 documents. One of the topics listed on the General Orientation form is "Human Resources" and one of the eight subtopics under Human Resources is "employee handbook." "Employee Handbook" also is one of the documents listed on the Personnel File Checklist.

Integrated, however, failed to provide testimony from anyone who was present during Cade's orientation, who gave or sent Cade an employee handbook, or who could explain how the orientation was conducted or what these documents mean. The only testimony Integrated submitted regarding these documents is a declaration from its current Vice President of Human Resources, who simply declared these two documents were found in Cade's personnel file. Neither document states Cade was actually provided a Tenet Employee Handbook and neither mentions arbitration or any other form of dispute resolution.

Moreover, Cade submitted a declaration stating she does not recall ever receiving an employee handbook and does not believe she received one because she kept her orientation documents and they do not include a handbook. Cade also declares she never discussed an arbitration policy or agreement with anyone from Integrated's management.

The foregoing constitutes substantial evidence supporting the trial court's finding Integrated failed to meet its evidentiary burden to establish Cade received a Tenet Employee Handbook containing the Fair Treatment Process. (See *Quigley v. McClellan* (2013) 214 Cal.App.4th 1276, 1282-1283 [substantial evidence "is evidence of

---

approached her during one of her shifts and asked her to sign an Application for Employment containing an arbitration clause. Cade declined.

15

ponderable legal significance that is reasonable, credible and of solid value, supporting the challenged findings of the trier of fact"].) Without evidence establishing Cade received (or at least was sent) a Tenet Employee Handbook making the Fair Treatment Process a condition of her employment, there is no basis to conclude an implied-in-fact arbitration agreement existed based on her continued employment. (See *Craig*, *supra*, 84 Cal.App.4th at pp. 420-422.)

Integrated contends we need not decide whether the evidence establishes Cade agreed to arbitrate her claims because she conceded she did. Specifically, Integrated contends the declaration Cade filed to oppose its motion stated she "'had no choice of whether to accept any arbitration provision.'" This statement is taken out of context and does not support Integrated's contention. Cade never stated she accepted an arbitration agreement and, in fact, emphasized she did not sign her Application for Employment containing an arbitration provision. Cade simply stated Integrated never discussed arbitration with her when she applied for her position and Integrated did not give her a choice of accepting or rejecting any arbitration provision. None of these statements amount to an admission that Cade agreed to arbitrate her claims.

Integrated also contends an implied-in-fact arbitration agreement does not require the employee receive notice of the employer's policy making arbitration a condition of employment. Integrated is mistaken. Case law clearly requires an employee receive notice of a condition the employer places on the employee's employment before the employee can impliedly accept that condition by beginning or continuing to work for the employer. (*Schachter*, *supra*, 47 Cal.4th at p. 620; c.f. *Serpa*, *supra*, 215 Cal.App.4th at pp. 706-708 [implied covenant of good faith and fair dealing requires employer to give employee reasonable notice of changes in the terms or conditions of employment].) We do not suggest an employee may avoid an employer's arbitration policy imposed as a condition of employment by remaining willfully, or even negligently, ignorant of the policy. For example, an employee may not avoid an implied-in-fact arbitration

16

agreement by failing to read a notice the employer sent to notify the employee about the employer's arbitration policy.  (See *24 Hour Fitness*, *supra*, 66 Cal.App.4th at p. 1215 [employee who signed acknowledgment that she received an employee handbook containing an arbitration provision cannot avoid arbitration by failing to read the handbook; "'"[a] party cannot use his own lack of diligence to avoid an arbitration agreement"'"].)  Here, however, Integrated failed to show it gave Cade notice of its arbitration policy imposed as a condition of employment.

Accordingly, we affirm the trial court's order denying Integrated's motion to compel Cade to arbitrate her claims because Integrated failed to establish it had either an express or implied-in-fact arbitration agreement with Cade.

D.      *Integrated Cannot Compel Plaintiffs to Arbitrate Their Claims Because It Failed to Establish the Terms of an Enforceable Arbitration Agreement*

Integrated contends the trial court erred in denying its motions to compel arbitration because Plaintiffs each agreed to arbitrate their claims under the Fair Treatment Process set forth in the Tenet Employee Handbook.  According to Integrated, the Employee Acknowledgment Form, Application for Employment, and Transition Letter Plaintiffs signed incorporated the Fair Treatment Process and established its binding arbitration provisions as the exclusive means for resolving all claims regarding Plaintiffs' employment.  Although we agree Plaintiffs (except Cade) generally agreed to *a* Fair Treatment Process by signing one or more of these documents, we nonetheless affirm the trial court's order denying the motions to compel arbitration because Integrated failed to present sufficient evidence establishing the specific Fair Treatment Process it presented to the trial court was the Fair Treatment Process to which Plaintiffs agreed.

"'"'It is, of course, the law that the parties may incorporate by reference into their contract the terms of some other document.  [Citations.]  But each case must turn on its facts.  [Citation.]  For the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal, the

17

reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties.'" [Citations.]' [Citation.]" (*Wolschlager v. Fidelity National Title Ins. Co.* (2003) 111 Cal.App.4th 784, 790 (*Wolschlager*).) "The contract need not recite that it 'incorporates' another document, so long as it 'guide[s] the reader to the incorporated document.' [Citations.]" (*Shaw v. Regents of University of California* (1997) 58 Cal.App.4th 44, 54.) If these conditions are met, an employee may agree to arbitrate claims against his or her employer by signing an acknowledgment form that incorporates the employer's employee handbook and the arbitration policy it contains. (*Serpa*, *supra*, 215 Cal.App.4th at p. 705; see also *24 Hour Fitness*, *supra*, 66 Cal.App.4th at p. 1205.)

The party seeking to enforce an arbitration provision incorporated by reference must establish the provision it seeks to enforce is the same provision to which the parties agreed. (*Kleveland v. Chicago Title Ins. Co.* (2006) 141 Cal.App.4th 761, 765 (*Kleveland*).) In *Kleveland*, a title insurance company provided the plaintiff with a preliminary title report offering to insure the plaintiff's property on the terms provided in the report, including the terms of the standard American Land Title Association policy form (ALTA policy) the report incorporated by reference. The report did not include an arbitration provision, but the ALTA policy did. The plaintiff accepted the offer in the title report and purchased insurance from the insurer on those terms. The insurer, however, issued the plaintiff a standard California Land Title Association form policy (CLTA policy) rather than the ALTA policy agreed to in the preliminary title report. When the plaintiff later filed suit against the insurer regarding an easement the preliminary title report failed to identify, the insurer petitioned to compel arbitration based on an arbitration provision in the CLTA policy. The trial court denied the petition and the Court of Appeal affirmed. (*Id.* at pp. 763-764.)

Although the preliminary title report incorporated the ALTA policy and its arbitration provision, the *Kleveland* court explained the insurer could not enforce that arbitration provision because the insurer did not issue the ALTA policy upon which the parties agreed and therefore the ALTA policy's arbitration provision never went into effect. The court further explained the insurer could not enforce the arbitration provision in the CLTA policy because the preliminary title report did not incorporate that policy and therefore the parties did not agree to its arbitration provision. The insurer argued the court should nonetheless order the plaintiff to arbitration because the plaintiff agreed to arbitration by accepting the title report incorporating the ALTA policy and the arbitration provisions in the two policies were "virtually identical." The *Kleveland* court, however, found the similarities between the two policies irrelevant because the court could only enforce the specific arbitration provision on which the parties agreed and the insurer's decision to issue a different policy prevented that provision from going into effect. (*Kleveland*, *supra*, 141 Cal.App.4th at p. 765.)

The *Kleveland* decision emphasizes mutual consent is an essential element of any contract. (See *Weddington*, *supra*, 60 Cal.App.4th at p. 811.) "Consent is not mutual, unless the parties all agree upon the same thing in the same sense." (Civ. Code, § 1580.) Indeed, "[t]he parties' outward manifestations must show that the parties all agreed 'upon the same thing in the same sense.' [Citation.] If there is no evidence establishing a manifestation of assent to the 'same thing' by both parties, then there is no mutual consent to contract and no contract formation. [Citations.]" (*Weddington*, at p. 811.)

Here, we affirm the trial court's order denying the motions to compel arbitration because Integrated failed to show Plaintiffs and Integrated agreed upon the same thing in the same sense — that is, to arbitrate Plaintiffs' claims under the specific Fair Treatment Process that Integrated presented to the trial court as the controlling arbitration provision. As *Kleveland* demonstrates, it is not sufficient for the party seeking

19

to compel arbitration to show the parties generally agreed to arbitrate their disputes by incorporating some arbitration provision into their contract. Rather, the party must establish the precise arbitration provision which the parties incorporated into their agreement to govern their disputes.

As the Fair Treatment Process to which it and Plaintiffs agreed, Integrated presented 12 pages from the "Western Medical Center Employee Handbook, Western Medical Center Santa Ana" (Western Med Santa Ana Employee Handbook). Integrated, however, failed to present any evidence identifying the Western Med Santa Ana Employee Handbook as the source of the Fair Treatment Process to which Plaintiffs agreed. The Employee Acknowledgment Form, Application for Employment, and Transition Letter Plaintiffs signed either identify documents other than the Western Med Santa Ana Employee Handbook as the source of the incorporated Fair Treatment Process or identify no specific document at all as the source of the agreed-upon Fair Treatment Process. Moreover, Integrated provides no explanation how the seven Plaintiffs who worked at hospitals other than Western Med Santa Ana agreed to an arbitration provision in an employee handbook for a hospital at which they did not work.[7]

The Employee Acknowledgment Form five Plaintiffs signed states they received a copy of the "Tenet Employee Handbook and Standards of Conduct" and the "Tenet Fair Treatment Process brochure." The Form does not mention either the Western Med Santa Ana Employee Handbook or that the Fair Treatment Process is set forth in any employee handbook. To the contrary, the Form states the Fair Treatment Process is in the Tenet Fair Treatment Process brochure, but Integrated failed to submit a copy of that

---

[7] Any argument that an implied-in-fact arbitration agreement required Plaintiffs to arbitrate their claims also would fail for the same reasons. Although all Plaintiffs except Cade acknowledged Integrated had an arbitration policy and continued working for Integrated, Integrated failed to establish the terms of that policy and therefore it may not be enforced against Plaintiffs.

20

brochure to the trial court and does not explain that failure. Accordingly, the Employee Acknowledgment Form does not establish Plaintiffs agreed to the Fair Treatment Process set forth in the Western Med Santa Ana Employee Handbook Integrated presented to the trial court.

The Application for Employment five other Plaintiffs signed states those Plaintiffs agreed all disputes regarding their employment would be subject to the Fair Treatment Process, including its binding arbitration provisions. The Transition Letter another five Plaintiffs signed simply states those Plaintiffs agreed to utilize the existing Fair Treatment Process to resolve all disputes relating to their employment, but does not mention arbitration. Despite these clear references to a Fair Treatment Process as the exclusive means for resolving all disputes, neither the Application nor the Letter guides the reader to any particular document where that Fair Treatment Process can be found. In particular, the Application and Letter do not refer to the Western Med Santa Ana Employee Handbook, which contained the controlling Fair Treatment Process. (*Chan v. Drexel Burnham Lambert, Inc.* (1986) 178 Cal.App.3d 632, 641, 643-644 (*Chan*) [refusing to enforce an arbitration provision purportedly incorporated into the parties' contract because the contract failed to clearly identify by title the specific document containing the arbitration provision].) Accordingly, the Application and Letter also fail to establish Plaintiffs agreed to the Fair Treatment Process described in the Western Med Santa Ana Employee Handbook.

Integrated contends it had only one Fair Treatment Process during the relevant time period and therefore the Fair Treatment Process described in the Western Med Santa Ana Employee Handbook is necessarily the same Fair Treatment Process to which Plaintiffs agreed when they signed the Employee Acknowledgment Form, Application for Employment, and Transition Letter. But even if we assume Integrated had one Fair Treatment Process, Integrated still failed to meet its burden of establishing

21

Plaintiffs agreed to the Fair Treatment Process as described in the Western Med Santa Ana Employee Handbook.

As explained above, incorporation by reference requires the parties' contract to clearly and unequivocally identify the document being incorporated (*Wolschlager*, *supra*, 111 Cal.App.4th at p. 790) and it is the terms in that specific document to which the parties agree (see *Kleveland*, *supra*, 141 Cal.App.4th at p. 765). The Employee Acknowledgment Form incorporated the Fair Treatment Process as described in the Tenet Fair Treatment Process brochure, not as described or summarized in any other document. Integrated neither presented the Tenet Fair Treatment Process brochure nor explained why it failed to do so. Moreover, Integrated presents no authority that allows it to establish terms incorporated into a contract by presenting documents other than the one incorporated into the contract. We decline to compel arbitration based on a document to which the parties did not agree. (See *ibid*.)

Whether Integrated had only one Fair Treatment Process similarly does not overcome the evidentiary deficiencies relating to the Application for Employment or Transition Letter some Plaintiffs signed. As explained above, although both documents refer to the Fair Treatment Process, neither clearly and unequivocally identifies where that process is set forth, and therefore fails to adequately incorporate it by reference. (*Chan*, *supra*, 178 Cal.App.3d at pp. 641, 643-644.)

Integrated next argues the Western Med Santa Ana Employee Handbook it introduced into evidence is the employee handbook referred to in the Employee Acknowledgment Form. According to Integrated, it is "obvious" Integrated simply placed a Western Med Santa Ana cover page on the existing Tenet Employee Handbook when it purchased the Hospitals because the body of the Handbook repeatedly refers to Tenet rather than Western Med Santa Ana. This argument is a red herring because the Employee Acknowledgment Form refers to the Tenet Fair Treatment Process brochure as the source of the Fair Treatment Process, not the Tenet Employee Handbook.

22

Nonetheless, we reject this argument because it is based solely on speculation unsupported by any evidence in the record. The repeated references to Tenet in the Western Med Santa Ana Employee Handbook do not establish it as the Tenet Employee Handbook when the title page clearly identifies it as the Western Med Santa Ana Employee Handbook. The references to Tenet in the Western Med Santa Ana Employee Handbook are neither surprising nor significant because Tenet owned Western Med Santa Ana when it issued the handbook.

Integrated also contends we may ignore the incorporation references to the Fair Treatment Process in the Employee Acknowledgement Form and Application for Employment and enforce those documents as stand-alone arbitration agreements because they express an intent to arbitrate all disputes between Integrated and Plaintiffs. Both documents state Plaintiffs agree to submit any dispute regarding their employment to binding arbitration. The Employee Acknowledgment Form further states the arbitration will be conducted under the American Arbitration Association's procedural rules and describes how the arbitrator's fees and administrative costs will be divided among the parties.[8] We nonetheless decline to enforce these documents as stand-alone arbitration agreements because they are incomplete without the Fair Treatment Process, which each document incorporated as the governing process for resolving all disputes. Without the incorporated Fair Treatment Process, we cannot determine the terms under which any arbitration must be conducted. There simply would be no basis to enforce the agreement.

---

[8]    Although Integrated initially contends the Transition Letter also should be enforced as a stand-alone arbitration agreement, it fails to point to any language in the Transition Letter expressing an intent to arbitrate any claims other than the language incorporating the Fair Treatment Process. Indeed, the Transition Letter merely states Integrated and Plaintiffs agree to utilize the Fair Treatment Process to resolve all disputes relating to Plaintiffs' employment. The Transition Letter fails to even mention arbitration.

A petition to compel arbitration "'"'"is in essence a suit in equity to compel specific performance of a contract.'"'" [Citations.]" (*Mansouri v. Superior Court* (2010) 181 Cal.App.4th 633, 641-642; see also *Gorlach*, *supra*, 209 Cal.App.4th at p. 1505.) As with any other specific performance claim, a party seeking to enforce an arbitration agreement must show the agreement's terms "'are sufficiently definite to enable the court to know what it is to enforce.'" (*Real Estate Analytics, LLC v. Vallas* (2008) 160 Cal.App.4th 463, 472; 13 Witkin, Summary of Cal. Law (10th ed. 2005) Equity, § 42, p. 334.) Indeed, a petition to compel arbitration must set forth the provisions of the arbitration agreement verbatim or attach a copy of the agreement and incorporate it by reference. (Cal. Rules of Court, rule 3.1330; *Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215, 218.) "'Only the valid and binding agreement of the parties, including all material terms well-defined and clearly expressed, may be ordered specifically performed.' [Citation]." (*Weddington*, *supra*, 60 Cal.App.4th at p. 817.) Because the Employee Acknowledgment Form and Application for Employment are incomplete without the incorporated Fair Treatment Process, we may not enforce them as stand-alone arbitration agreements. (See *id*. at pp. 816-817.)

Finally, Integrated contends we should reverse the trial court's decision denying its motions because Plaintiffs' trial court oppositions conceded Plaintiffs each agreed to arbitrate their claims against Integrated. We reject this contention because it does not address the grounds on which we affirm the trial court's decision. We acknowledge all Plaintiffs except Cade signed at least two documents stating they agreed to arbitrate their claims against Integrated. We nonetheless affirm the trial court's decision because Integrated failed to present sufficient evidence to establish all of the terms of the parties' agreement and therefore we cannot enforce the agreement. Nothing in Plaintiffs' trial court oppositions overcomes the evidentiary shortcomings described above.

24

We emphasize our decision is based solely on the insufficiency of Integrated's evidence.  We do not suggest an arbitration provision in an employee handbook is unenforceable or that employees cannot agree to arbitration by signing an acknowledgment form regarding an employee handbook that contains an arbitration provision.  Rather, we affirm the trial court decision because the incomplete and confusing patchwork of documents Integrated submitted prevents us from finding an enforceable arbitration agreement.  Because we affirm the trial court's decision based on the insufficiency of Integrated's evidence, we do not address the merits of the parties' contentions concerning the unconscionability of the Fair Treatment Process described in the Western Med Santa Ana Employee Handbook.

III

DISPOSITION

The order is affirmed.  Plaintiffs shall recover their costs on appeal.


ARONSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


FYBEL, J.

25

Filed 7/23/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ALEXANDRA AVERY et al., | |
| Plaintiffs and Respondents, | G046202 |
| v. | (Super. Ct. No. 30-2009-00274060) |
| INTEGRATED HEALTHCARE HOLDINGS, INC., et al., | ORDER GRANTING REQUEST FOR PUBLICATION |
| Defendants and Appellants. | |

Pursuant to California Rules of Court, rule 8.1105(c), and for good cause shown, nonparty Capstone Law's request to publish the opinion filed on June 27, 2013 is GRANTED. The entire opinion is ordered published in the Official Reports. (Cal. Rules of Court, rule 8.1105(b).)

ARONSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


FYBEL, J.