Filed 10/10/13  Perry v. Automobile Club of So. Cal. CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| DINA PERRY, | |
| Plaintiff and Respondent, | G048096 |
| v. | (Super. Ct. No. 30-2012-00610260) |
| AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, William M. Monroe, Judge.  Affirmed.

Manuel Dominguez for Defendant and Appellant.

Mower & Carreon, Jon R. Mower, Dan J. Bulfer; Atkinson, Andelson, Loya, Ruud & Romo, and Dan J. Bulfer for Plaintiff and Respondent.

\*       \*       \*

Defendant Automobile Club of Southern California (Auto Club) appeals from an order denying its petition to compel arbitration of a wrongful termination lawsuit. The trial court found as a matter of fact that the arbitration agreement was never given to plaintiff Dina Perry, she was never made aware of it, and thus she never agreed to it. In its briefing, the Auto Club emphasizes several bullet points of supposedly convincing evidence that Perry in fact was aware of the arbitration agreement and thus impliedly consented to it by continuing to work. Where substantial evidence supports the factual finding, however, we are bound by it. Here, Perry submitted a declaration testifying that she was never given the arbitration agreement and was not made aware it was a condition of her employment. Accordingly, we affirm.

FACTS

Perry had worked for the Auto Club for over 26 years when she was fired in 2012. The circumstances of her firing are in dispute and are irrelevant to the issues before us. Perry filed a complaint alleging several causes of action, the gist of which was wrongful termination. Rather than answer, the Auto Club brought a motion to compel arbitration.

According to the Auto Club's evidence, when Perry was first hired there was no arbitration agreement in place. In 2004, the Auto Club decided to adopt a policy requiring all employees to abide by an arbitration agreement set forth in a document entitled "Mutual and Binding Arbitration Agreement" (Arbitration Agreement). Continued employment was conditioned on accepting the agreement. The Auto Club attached a copy of the Arbitration Agreement to its moving papers. The version it attached had no signature block at the bottom.

To obtain each employee's agreement, the Vice President of Human Resources at the Auto Club drafted a memorandum explaining the new rule, attached a

2

copy of the Arbitration Agreement, and, in his words, "caused copies of my memorandum with the attached Arbitration Agreement to be distributed to all employees through their managers in accordance with the Auto Club's custom and practice of distributing written communications from management."

To that end, the Auto Club's moving papers included a document entitled "Mutual and Binding Arbitration Agreement Confirmation Acknowledgment Form," wherein Rachel Maytorena purports to confirm that various employees received a copy of the Arbitration Agreement, including Perry. We are told in the Auto Club's brief that Maytorena was Perry's manager at the time but no longer works for the Auto Club, though nothing in the record supports those statements. The list of employee names include "Dina Colon," and we are told in the Auto Club's brief that this was Perry's name at the time, though, again, there is no record support for that fact. Importantly, none of the Auto Club's witnesses even purported to lay a foundation for this exhibit.

In opposition, Perry submitted a declaration denying she had ever been presented with the Arbitration Agreement: "Prior to reviewing [the Auto Club's moving papers], I have never seen the purported memorandum attached to the declaration of [the vice president of human resources] as Exhibit 1. I was never presented with, signed, or asked to sign any arbitration agreement during my employment with the Auto Club. Likewise, at no time prior to or during my tenure with the Auto Club was I informed that I was or would be bound by any policy requiring me to arbitrate any dispute arising from my employment with the Auto Club. I had no meetings or discussions with, and received no handouts or other communications from, Rachel Maytorena regarding the purported memorandum . . . regarding any arbitration agreement."

Perry also produced a declaration from a former supervisor at the Auto Club. The supervisor noted that the Auto Club's employee handbook references a separate arbitration agreement. The supervisor attached a copy of the referenced Arbitration Agreement, which, notably, *does* have a signature block.

3

In reply, the Auto Club produced two additional exhibits.

First is a list of all of the training courses Perry took during her employment. The Auto Club tells us these courses include "classes as a Supervisor in the knowledge of the [Auto Club's] Binding Arbitration policy for employees," though we do not see that anywhere in the list of courses and the Auto Club has not pointed to any other record reference for that fact.

The second exhibit contains three different signed acknowledgments by Perry agreeing to be bound by the terms of the employee handbook. The version of the handbook in the record (though it is unclear whether any of the acknowledgments pertain to this version of the handbook) states, "any disputes employees may have with the Club and any disputes the Club may have with you will be resolved, *when applicable*, by submission to binding arbitration pursuant to the Club's Mutual and Binding Arbitration Agreement applicable to all employees." (Italics added.)

The court denied the motion. "Given that the burden of proof rests with defendant, this Court cannot find that there exists an enforceable arbitration agreement here. Yes it was unilateral, but there is no evidence that plaintiff knew about it. It was never mailed to her home, nor made part of any performance review, nor discussed with her. The 'acknowledgment' signed by plaintiff's former supervisor is hearsay and lacks foundation: plus, [Maytorena] telling her supervisors that she carried out [the vice president of human resources'] directive does not mean she actually did it." The court also found the Arbitration Agreement was unconscionable. The Auto Club timely appealed.

DISCUSSION

*Relevant Legal Principles and Standard of Review*

"Both the California Arbitration Act (Code Civ. Proc., § 1280 et seq.) and the Federal Arbitration Act ( . . . 9 U.S.C. § 1 et seq.) recognize ""'arbitration as a speedy and relatively inexpensive means of dispute resolution'" and are intended '"to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing.'" [Citation.]' [Citations.] The fundamental policy underlying both Acts 'is to ensure that arbitration agreements will be enforced *in accordance with their terms.*' [Citations.]

"Arbitration is therefore a matter of contract. [Citation.] The """" . . . policy favoring arbitration cannot displace the necessity for a voluntary *agreement* to arbitrate.'" [Citation.] "Although '[t]he law favors contracts for arbitration of disputes between parties' [citation], '"there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate . . . ."' [Citations.]" [Citation.] 'Absent a clear agreement to submit disputes to arbitration, courts will not infer that the right to a jury trial has been waived.' [Citation.]" [Citation.]' [Citation.]

"Code of Civil Procedure section 1281.2 requires a trial court to grant a petition to compel arbitration 'if [the court] determines that an agreement to arbitrate the controversy exists.' (Code Civ. Proc., §1281.2.) Accordingly, '"when presented with a petition to compel arbitration the trial court's first task is to determine whether the parties have in fact agreed to arbitrate the dispute. [¶] . . ." [Citation.]' [Citations.] 'A party seeking to compel arbitration has the burden of proving the existence of a valid agreement to arbitrate. [Citations.] Once that burden is satisfied, the party opposing arbitration must prove by a preponderance of the evidence any defense to the petition.'" (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 59 (*Avery*); see also *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187,

5

1204; *AT & T Mobility LLC v. Concepcion* (2011) 563 U.S. ___, ___, 131 S.Ct. 1740, 1745; *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 836, fn. 10.)

"There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed." (*Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425.) Where, as here, the issue turns on whether one party received and agreed to an arbitration policy, the substantial evidence standard applies. (*Avery*, *supra*, 218 Cal.App.4th at pp. 59-60.)[1]

*Substantial Evidence Supports the Court's Ruling*

"California law permits employers to implement policies that may become unilateral implied-in-fact contracts when employees accept them by continuing their employment." (*Asmus v. Pacific Bell* (2000) 23 Cal.4th 1, 11.) "A unilateral, implied-in-fact arbitration agreement may be enforced against an employee to require the employee to arbitrate all claims against his or her employer." (*Avery*, *supra*, 218 Cal.App.4th at 63.) However, "[c]ase law clearly requires an employee receive notice of a condition the employer places on the employee's employment before the employee can impliedly accept that condition by beginning or continuing to work for the employer." (*Id.* at p. 65.) As the Auto Club's counsel recognized at the trial court level, "[t]he question really comes down to whether or not Ms. Perry received [the arbitration agreement] or knew about it."

---

[1] The Auto Club initially misstated the standard of review as being simply de novo, citing only cases dealing with the interpretation of a statute or agreement. After being challenged on that, in its reply brief the Auto Club concedes the substantial evidence standard applies "[w]here the trial court's decision of arbitrability is based on disputed facts . . . ."

6

Perry specifically testified that she never received a copy of the arbitration agreement and was never made aware of it. All things being equal, this is plainly substantial evidence to support the court's ruling. (See *Avery*, *supra*, 218 Cal.App.4th at pp. 64-65.)

The Auto Club's principal response is to marshal the evidence that she did know about it, and conclude, "the Trial Court in the present case should have found that there was substantial evidence that [Perry] received and/or knew the [Auto Club's] arbitration agreement . . . and [that Perry] chose to continue to work for [the Auto Club] after knowing for many years (the last eight years as a Supervisor) and thereby agreed to be bound by the terms of the Appellant's Binding Arbitration Agreement."

Of course, we will not indulge that argument. "'Everything has been said already; but as no one listens, we must always begin again.' With rhythmic regularity it is necessary for us to say that where the findings are attacked for insufficiency of the evidence, our power begins and ends with a determination as to whether there is *any* substantial evidence to support them; that we have no power to judge of the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom." (*Overton v. Vita-Food Corp.* (1949) 94 Cal.App.2d 367, 370 disapproved on other grounds by *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 866, fn. 2.)[2]

The only evidence that bears mention is Perry's acknowledgment of the terms of the employee handbook, which references the policy of arbitrating disputes

---

[2] Another reason we refuse to indulge the Auto Club's argument is that the only direct evidence of Perry receiving the Arbitration Agreement, Maytorena's confirmation form, was found by the trial court to lack foundation and contain hearsay — a fact conspicuously omitted from the Auto Club's brief. The court's finding was plainly correct, as none of the Auto Club's witnesses even attempted to lay a foundation based on personal knowledge or the business records exception.

pursuant to a separate Arbitration Agreement "when applicable." This evidence is insufficient for a few reasons.

First, as we have noted, it references a separate arbitration agreement that governs "when applicable." In other words, by the handbook's terms, the Arbitration Agreement may or may not apply. Plainly, acknowledging this statement is not an acknowledgment that the Arbitration Agreement *does* apply.

Second, even if the handbook had more plainly stated that it did apply, we would not enforce the terms of a separate Arbitration Agreement that was merely mentioned in an employee handbook but never shown to the employee. *Mitri v. Arnel Management Co.* (2007) 157 Cal.App.4th 1164 (*Mitri*) is instructive.

In *Mitri*, as here, an employer moved to compel arbitration, and though it could not produce a signed arbitration agreement, it contended a reference to the arbitration policy in the employee handbook bound the employee. The handbook stated, "'[A]ny dispute arising out of employment with the Company, as allowed by law, will be settled by binding arbitration.'" (*Mitri*, *supra*, 157 Cal.App.4th at p. 1170.) It went on to say, however, "'[a]s a condition of employment, all employees are required to sign an arbitration agreement.'" The court denied the motion and the Court of Appeal affirmed, stating, "This provision completely undermines any argument by defendants the provision in the handbook itself was intended to constitute an arbitration agreement between [defendant] and its employees." (*Id.* at pp. 1170-1171.)

Naturally, the Auto Club distinguishes *Mitri* on the basis that, here, the arbitration agreement contained no signature block, and instead operated unilaterally. We note, however, that the evidence was in conflict in that regard: Perry produced evidence that the arbitration agreement did, in fact, have a signature block. If we resolve that conflict in favor of the court's ruling, *Mitri* is on all fours.

The trial court did reference a "unilateral" agreement, however, which may be interpreted as resolving that particular factual dispute in favor of the Auto Club. Even

8

with that assumption, we find *Mitri* instructive and are not persuaded the Auto Club is entitled to reversal.

The fundamental issue in *Mitri* was whether the employees had consented to the arbitration agreement. As the court noted, "Section 1550, subdivision 2, of the Civil Code establishes the rule that an essential component to a contract is the consent of the parties to the contract. [Citation.] Civil Code section 1565, subdivision 3 provides, '[t]he consent of the parties to a contract must be . . . [¶] . . . [¶] . . . [c]ommunicated by each to the other.'" "Here, the documents submitted by defendants do not show either plaintiff ever consented to binding arbitration of claims arising out of the employment relationship with [defendant]." (*Mitri*, *supra*, 157 Cal.App.4th at p. 1170; see also *Romo v. Y–3 Holdings, Inc., supra,* 87 Cal.App.4th at p. 1158 ["'There is no public policy in favor of forcing arbitration of issues the parties have not agreed to arbitrate'"].)

Similarly, here, Perry is bound by the Arbitration Agreement only if she consented to it. True, her consent was to be implied by performance instead of made explicit with a signature. But we cannot find implied consent where the employee has not even been shown a copy of the contract and otherwise has no knowledge of its terms. (See *Avery*, *supra*, 218 Cal.App.4th at pp. 64-65 [affirming denial of motion to compel arbitration where unilateral agreement was never shown to employee].) Even if the employee handbook communicated that the gist of the agreement was to require arbitration, an employer must do more than simply make the employee aware of the gist. It must make the employee aware of the actual terms of the contract for the employee's performance to imply consent to those terms.

Further, an ordinary person reading the employee handbook would not know the Arbitration Agreement was unilateral, and the natural assumption is that any reference to a separate agreement would have to be signed by the employee. So the mere acknowledgment of the existence of a separate agreement is not an acknowledgment that Perry is bound by it without a signature.

9

Accordingly, the acknowledgment of the employee handbook did not compel the court to find Perry had consented to the Arbitration Agreement.  And since the court's ruling is supported by substantial evidence, we must affirm.[3]

DISPOSITION

The court's order is affirmed.  Perry shall recover her costs on appeal.

IKOLA, J.

WE CONCUR:

MOORE, ACTING P. J.

ARONSON, J.

---

[3] The court also found the Arbitration Agreement was unconscionable, and the parties extensively briefed that issue.  Because our resolution of the preliminary issue of consent is dispositive, however, we do not address unconscionability.