Filed 5/5/23 Guzman v. Front Porch Communities and Services CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CECILIA GUZMAN, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> FRONT PORCH COMMUNITIES AND SERVICES, <br><br> Defendant and Appellant. | B314877 <br><br> Los Angeles County Super. Ct. No. 21STCV03740 |

APPEAL from an order of the Superior Court of Los Angeles County, Maureen Duffy-Lewis, Judge. Reversed with directions.

Offices of Timothy F. Ryan, Timothy F. Ryan; Gordan Rees Scully Mansukhani and Shiao-wen Huang for Defendant and Appellant.

Pairavi Law, Edwin Pairavi and Joshua M. Mohrsaz for Plaintiff and Respondent.

Front Porch Communities and Services dba Villa Gardens (Front Porch) appeals from the trial court's order denying its petition to compel arbitration of Cecilia Guzman's complaint alleging causes of action relating to her former employment with Front Porch. Front Porch contends the trial court improperly construed the parties' arbitration agreement as containing a waiver of the right to bring claims under the California Labor Code Private Attorneys General Act of 2004 (PAGA; Lab. Code, § 2698 et seq.), rendering it substantively unconscionable. Alternatively, Front Porch argues any PAGA waiver did not invalidate the otherwise enforceable agreement under *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. ___ [142 S.Ct. 1906] (*Viking*), decided after the court's ruling. We follow *Viking* and reverse.

**FACTS AND PROCEDURAL BACKGROUND**

Front Porch is a nonprofit public benefit corporation that, among other things, owns and operates retirement homes and health care facilities for aged persons. Villa Gardens is a Front Porch retirement community that provides independent living, assisted living, skilled nursing, memory care, and other senior living services. In November 2014, Guzman began her employment with Front Porch as a certified nursing assistant at Villa Gardens.

During her orientation, Guzman signed an "employee acknowledgement form and at-will/arbitration agreement," acknowledging her receipt of a copy of the Front Porch 2014 employee handbook and agreeing to arbitrate claims relating to or arising from her employment. Guzman declared she did not receive a copy of the handbook that day.

2

In 2017, Front Porch issued a revised employee handbook to its employees that contained a revised agreement to arbitrate. Guzman signed an "employee acknowledgement form/arbitration agreement" on May 24, 2017. Guzman declared her supervisor handed her only the signature page to the agreement and did not discuss the arbitration agreement with her. She also declared she had a copy of the 2017 handbook, however.

Guzman sued Front Porch[1] in January 2021, alleging several causes of action under the Fair Employment and Housing Act (Gov. Code, § 12940 et seq.; FEHA) relating to sexual harassment and disability discrimination, as well as a cause of action for wrongful termination in violation of public policy.

Front Porch filed a motion to compel arbitration, in lieu of filing an answer, in response to Guzman's complaint. Front Porch asked the court to compel arbitration under the terms of the 2017 agreement, and alternatively, the 2014 agreement. According to its terms, the 2017 arbitration agreement "supersedes all previous agreements."

The 2017 agreement provides "any and all claims or controversies" between employer and employee "relating in any manner to the employment or the termination of employment of [e]mployee shall be resolved by final and binding arbitration." Claims arising under FEHA are specifically included among the arbitrable claims.

---

[1]     Guzman also sued Front Porch Enterprises, Inc. and Front Porch Communities Operating Group, LLC. Front Porch presented evidence that those entities have no employees. Guzman also named her supervisor as a defendant, by first name only, but there is no indication she served the summons and complaint on the supervisor.

Guzman opposed the motion to compel arbitration on the ground the agreement was unenforceable. Guzman argued the agreement included a PAGA waiver and, under *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*), overruled in part by *Viking, supra*, 142 S.Ct. 1906, the waiver rendered the agreement unenforceable as a matter of public policy. She also argued the agreement was unenforceable due to unconscionability. Guzman argued the agreement was a procedurally unconscionable contract of adhesion and several provisions within the agreement rendered it substantively unconscionable: it did not limit the employer's right to recover attorney fees and costs to frivolous or bad faith claims as required under FEHA; Front Porch was a repeat player with JAMS, the designated arbiter; and it did not provide for adequate discovery.

Front Porch countered that Guzman had misinterpreted the agreement's provision, which stated the arbitrator had no authority to decide a representative PAGA claim, and the unenforceability of any waiver did not invalidate the entirety of the agreement. With respect to unconscionability, Front Porch argued the agreement and JAMS rules did not impose unfair fees and costs, and limited prevailing party fees to the same extent as in court based on applicable law; there was no evidence Front Porch was a repeat player with JAMS, and the parties were to choose the JAMS arbitrator by mutual agreement; there was no limit on discovery; and the agreement was not procedurally unconscionable.

The court heard Front Porch's motion on August 13, 2021. A reporter's transcript is not part of the appellate record. The court denied the motion, finding the agreement procedurally and

4

substantively unconscionable. According to the minute order, the court found the agreement—"[g]iven the facts"—"appear[ed] to be adhesive" and thus procedurally unconscionable. The minute order then notes that, under *Iskanian*, agreements "that preclude bringing or joining in a PAGA claim" are "unlawful and contrary to public policy," and thus substantively unconscionable. Noting the agreement here appeared to include "a provision to sever," the court stated appellate courts have declined to sever PAGA waivers. The minute order then states, "The PAGA waiver remains part of the agreement and renders it substantively unconscionable." Front Porch appealed.[2]

## DISCUSSION

### 1. *Applicable law and standards of review*

The 2017 agreement[3] states it is to be "governed by the Federal Arbitration Act [FAA] and, to the extent permitted by such Act, the laws of the State of California." Parties to an arbitration agreement may "*expressly* designate" the FAA in their agreement. (*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 394.) Accordingly, our interpretation of the agreement is governed by the FAA and California law, to the extent it is not inconsistent with the FAA.

Both the FAA and the California Arbitration Act (Code Civ. Proc., § 1280 et seq.) "strongly favor arbitration" (*Prima Donna Development Corp. v. Wells Fargo Bank, N.A.* (2019)

---

[2] An order denying a petition to compel arbitration is immediately appealable. (Code Civ. Proc., § 1294, subd. (a).)

[3] The August 13, 2021 minute order refers specifically to provisions in the 2017 agreement. As the 2017 agreement also superseded the 2014 agreement, we consider only the 2017 agreement.

5

42 Cal.App.5th 22, 35), and "establish[ ] 'a presumption in favor of arbitrability' " (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125). The fundamental policy behind both acts is to " 'ensur[e] that private arbitration agreements are enforced according to their terms.' " (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 344; *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 836, fn. 10.) "Arbitration is therefore a matter of contract." (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 59 (*Avery*).)

Arbitration agreements thus are enforceable unless revocable under state law on grounds that exist for any contract, such as fraud, duress, and unconscionability. (9 U.S.C. § 2; Code Civ. Proc., § 1281; *Viking, supra*, 142 S.Ct. at p. 1917; *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 97–98, 114 (*Armendariz*).) A party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement, and the party opposing the petition bears the burden of establishing a defense to the agreement's enforcement. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.)

We apply general principles of contract law to determine whether a valid agreement to arbitrate exists. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.) "General contract law principles include that '[t]he basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting. [Citations.] . . . "The words of a contract are to be understood in their ordinary and popular sense." ' [Citation.] Furthermore, ' "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping

6

to interpret the other." (Civ. Code, § 1641.)' " (*Franco v. Greystone Ridge Condominium* (2019) 39 Cal.App.5th 221, 227.) "[A]mbiguities about the scope of an arbitration agreement must be resolved in favor of arbitration." (*Lamps Plus, Inc. v. Varela* (2019) 587 U.S. ___ [139 S.Ct. 1407, 1418].)

" 'There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed. [Citations.]' [Citation.] Interpreting a written document to determine whether it is an enforceable arbitration agreement is a question of law subject to de novo review when the parties do not offer conflicting extrinsic evidence regarding the document's meaning." (*Avery, supra*, 218 Cal.App.4th at p. 60.)

## 2. *The record is adequate for our de novo review*

Guzman contends Front Porch's failure to include a reporter's transcript in the appellate record, and to ask the trial court for a statement of decision, prevents a proper review of the court's ruling because its minute order "does not fully elucidate its reasoning for denying the Motion to Compel." She argues Front Porch thus has forfeited any objection to the trial court's findings, and we should apply the doctrine of implied findings to presume the trial court "made all necessary findings in denying Appellant's Motion to Compel Arbitration."

The trial court resolved contested facts—competing declarations between Front Porch and Guzman as to whether Front Porch personnel reviewed the arbitration agreements with Guzman—in finding the arbitration agreement was a contract

7

of adhesion and thus procedurally unconscionable. Front Porch does not challenge that factual finding on appeal, however. Rather, Front Porch contests only the trial court's legal finding that the agreement was substantively unconscionable under *Iskanian* because it contained an unlawful PAGA waiver.[4] The trial court did not resolve any factual issues in interpreting the agreement as substantively unconscionable based on its inclusion of a PAGA waiver. Nor did the parties introduce extrinsic evidence to aid the court in interpreting the agreement's terms.

Accordingly, we review de novo the meaning and legal effect of the agreement's purported PAGA waiver. (See, e.g., *Eminence Healthcare, Inc. v. Centuri Health Ventures, LLC* (2022) 74 Cal.App.5th 869, 875 ["As no extrinsic evidence relating to the arbitration agreement's meaning was submitted, we interpret the arbitration provision de novo."]; *Avery, supra*, 218 Cal.App.4th at p. 60.) We thus need not refer to a reporter's transcript or statement of decision to evaluate the challenged ruling properly. (E.g., *Chodos v. Cole* (2012) 210 Cal.App.4th 692, 699–700 [reporter's transcript unnecessary where parties did not rely on oral argument before the trial court and appellate court was to decide "a purely legal issue"]; cf. *Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58 ["The doctrine of implied findings requires the appellate court to infer the trial court made all *factual findings* necessary to support the judgment." (Italics added.)].)

---

[4] The *Iskanian* court actually held a PAGA waiver was "contrary to public policy," rather than a matter of substantive unconscionability. (*Iskanian, supra*, 59 Cal.4th at p. 384.)

### 3.    *PAGA,* Iskanian, *and* Viking

Under PAGA, an "aggrieved employee" may file a civil action against an employer for "a civil penalty" for violations of the Labor Code "on behalf of himself or herself and other current or former employees."  (Lab. Code, §§ 2698, 2699, subd. (a); *Navas v. Fresh Venture Foods, LLC* (2022) 85 Cal.App.5th 626, 634 (*Navas*).)  All PAGA actions—whether pursued for violations on behalf of the plaintiff alone or on behalf of others—are "representative" actions in that the employee acts on behalf of the State to redress Labor Code violations.  (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 986; see also *Viking, supra*, 142 S.Ct. at p. 1914 ["California precedent holds that a PAGA suit is a ' "representative action" ' in which the employee plaintiff sues as an ' "agent or proxy" ' of the State"].)

A PAGA action also is described as " 'representative' . . . where an employee seeks damages because of the employer's PAGA violations committed against a group of employees," versus an "individual PAGA action[ ] where the employee seeks damages for violations committed against the individual employee." (*Navas, supra*, 85 Cal.App.5th at p. 634; see also *Viking, supra*, 142 S.Ct. at p. 1916.)

Under *Iskanian*, an employment agreement that "compels the waiver of representative claims under . . . PAGA . . . is contrary to public policy and unenforceable as a matter of state law."  (*Iskanian, supra*, 59 Cal.4th at p. 384; see *Viking, supra*, 142 S.Ct. at p. 1916 [explaining that by "representative claims," the court in *Iskanian* meant "*representative standing* to bring PAGA claims"].)  When the trial court ruled, *Iskanian* also prohibited an arbitration agreement from dividing a PAGA action into arbitrable individual claims and non-arbitrable

9

representative (i.e., nonindividual) claims.[5] (*Iskanian*, at pp. 383–384; *Viking*, at pp. 1916–1917.) After the trial court ruled, however, the United States Supreme Court overruled *Iskanian* as preempted by the FAA to the extent "it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate." (*Viking*, at p. 1924; *id.* at p. 1923 [explaining *Iskanian* prohibits "parties from contracting around" an employee's ability to join Labor Code violation "claims that could have been raised by the State in an enforcement proceeding," although not personally suffered by the employee, "because it invalidates agreements to arbitrate only 'individual PAGA claims for Labor Code violations that an employee suffered' "].)

In *Viking*, the arbitration agreement at issue "purported to waive 'representative' PAGA claims." (*Viking, supra*, 142 S.Ct. at p. 1924.) The Court explained that provision, under *Iskanian*, "was invalid if construed as a wholesale waiver of PAGA claims." (*Ibid.*) The Court made clear this aspect of *Iskanian* was not preempted by the FAA. (*Id.* at pp. 1924–1925.) In the agreement before the Court, however, a severability clause provided that "if the waiver provision is invalid in some respect, any 'portion' of the waiver that remains valid must still be 'enforced in arbitration.' " (*Id.* at pp. 1916, 1925.) Accordingly, the Supreme Court held the employer "was entitled to enforce the agreement insofar as it mandated arbitration of [the employee's] individual PAGA claim." (*Id.* at p. 1925.) In other words, while "the *Iskanian* rule requiring mandatory joinder of individual and

---

[5] We will use the term "nonindividual" to refer to representative PAGA actions brought to redress Labor Code violations committed against other current or former employees.

representative PAGA claims is preempted[,] [t]he employer and employee . . . may agree to arbitrate an individual PAGA claim." (*Navas, supra*, 85 Cal.App.5th at p. 635.)

It is against this backdrop that we consider whether the purported PAGA waiver here invalidated the 2017 arbitration agreement.

**4.      *The 2017 arbitration agreement***

It is undisputed that Guzman's claims against Front Porch —seven FEHA claims and one tort claim—fall within the scope of the 2017 arbitration agreement. Guzman's complaint also does not assert any causes of action—individual or nonindividual— under PAGA. The parties dispute whether the agreement includes a "wholesale" PAGA waiver and, if so, whether the waiver invalidates the agreement. The relevant provisions of the agreement follow.

Paragraph 3(c), which falls under the heading "Arbitrator Selection and Authority," provides,

> "The arbitrator shall not have the authority to adjudicate class, collective, or representative claims (including without limitation claims under [PAGA] on behalf of any person other than Employee individually), to award any class, collective, or other representative relief on behalf of any person other than Employee, or, without all parties' consent, to consolidate the claims of two or more individuals, or otherwise preside over any form of a class, collective, or other representative proceeding. If this paragraph 3(c) is found by a court of competent jurisdiction to be unenforceable,

11

then the entirety of the Agreement shall be null and void."

Paragraph 7, entitled "Waiver of Class, Representative, and Collective Claims," states,

"To the fullest extent permitted by law, Employee and Employer each waives any right either may have to bring any class, collective, or representative action against the other party, whether in arbitration, in court, or otherwise, or to participate as a member of any class or collective action against the other party ('Waived Claims'). If a court or an arbitrator determines in any proceeding between the Parties that any such claims cannot be waived, then the non-waivable claims shall be adjudicated in court or such other forum as provided by law and not in arbitration."

Finally, paragraph 10 of the agreement is a severability clause: "Except as provided above in paragraph 3(c), above, [*sic*] regarding the arbitrator's lack of authority to certify or adjudicate class, collective, or other representative claims or to award class, collective, or other representative relief, if any provision of this Agreement shall be held to be invalid, unenforceable, or void, by a court of competent jurisdiction or an arbitrator such provision shall be stricken from the Agreement, and the remainder of the Agreement shall remain in full force and effect."

Front Porch argues these provisions do not include an impermissible "wholesale" waiver of all PAGA claims. It first

contends paragraph 3(c) is not a *waiver* of PAGA claims, but a statement that the arbitrator has no authority to hear nonindividual PAGA claims, while preserving the arbitrator's authority to adjudicate individual PAGA claims. Front Porch then argues that, because paragraph 7's waiver of "class, representative and collective claims" is silent as to PAGA, while paragraph 3(c) "specifically references PAGA collective claims," reading the two clauses together indicates the parties intended to prevent arbitration of nonindividual PAGA claims, "not to waive them entirely." Alternatively, Front Porch argues the agreement is not invalid because the waiver in paragraph 7 provides that if the court or arbitrator finds a nonindividual PAGA claim cannot be waived, then that nonwaivable claim will be adjudicated in court, while an individual PAGA claim is expressly arbitrable under paragraph 3(c).

Guzman, on the other hand, contends both paragraphs contain a PAGA waiver, noting a " 'representative action' " includes a PAGA action. She argues "there can be no serious question that the right to arbitrate PAGA actions has been lost under both paragraphs 3(c) and 7" of the agreement. Guzman argues the agreement is unenforceable under *Viking* because paragraph 3(c) precludes arbitration of representative PAGA actions and cannot be severed from the agreement without rendering the agreement invalid. Guzman notes the Supreme Court in *Viking* agreed the PAGA waiver in that arbitration agreement would have rendered it unenforceable under California law "but for the severability clause." In contrast to the PAGA waiver in *Viking*, she argues, the PAGA waiver here is exempt from the agreement's severability clause, rendering the agreement unenforceable.

13

We disagree with Guzman that paragraph 3(c) constitutes a waiver of representative PAGA claims and with Front Porch that paragraph 7 does not constitute a waiver of PAGA claims. First, unlike in paragraph 7, nowhere in paragraph 3(c) does the term "waiver" appear. Nor does the paragraph refer to the parties' giving up their rights to pursue class or representative claims against each other, as paragraph 7 does. Rather, the plain language of paragraph 3(c) makes clear the arbitrator has *no authority* to adjudicate class, collective, or representative claims, including "claims under [PAGA] on behalf of any person *other than Employee individually*." (Italics added.) In other words, the agreement expresses the parties' lack of consent to arbitrate representative claims, including representative PAGA claims *brought on behalf of others*. By excluding from the arbitrator's lack of authority a PAGA claim brought on behalf of the employee individually, however, the provision unmistakably expresses the parties' intent to arbitrate only individual PAGA claims. Thus, the agreement here does not deprive Guzman of her right to pursue an individual PAGA claim. (*Cf. Navas, supra*, 85 Cal.App.5th at p. 635 [under *Iskanian*, employee with an individual PAGA claim could not be deprived of the option to pursue it altogether through a predispute employment agreement].)

Paragraph 7, by contrast, expressly requires the "waive[r]" of the "right . . . to bring *any* class, collective, or representative action . . . *whether in arbitration, in court, or otherwise*." (Italics added.) Given this plain language, we cannot agree with Front Porch's assessment that paragraph 7—which does not mention PAGA—when read together with paragraph 3—which does mention PAGA—evidences the parties' intent to forgo only

14

arbitration of nonindividual PAGA claims rather than to waive them entirely. In *Iskanian*, our high court held an agreement that required the waiver of " 'representative actions' " undisputedly "cover[ed] representative actions brought under [PAGA]." (*Iskanian, supra*, 59 Cal.4th at p. 378.) Paragraph 7 expressly precludes the right to bring any representative action in arbitration and court. We thus read paragraph 3's specific reference to PAGA as clarifying the parties' intent to arbitrate individual PAGA claims, and lack of consent to arbitrate nonindividual PAGA claims, among others. Accordingly, paragraph 7 acts as an unenforceable waiver of PAGA claims.

Under *Viking*, however, that waiver does not render the agreement here unenforceable. As in *Viking*, and noted by the trial court, paragraph 7 contains its own severability provision. That provision is almost identical to the one at issue in *Viking*, by providing that if a court or arbitrator finds the waiver in paragraph 7 is unenforceable as to any claim, then that "non-waivable claim[ ] shall be adjudicated in court . . . and not in arbitration." (See *Viking, supra*, 142 S.Ct. at p. 1916 [stating waiver "contained a severability clause specifying that if the waiver was found invalid, any class, collective, representative, or PAGA action would presumptively be litigated in court"].) Accordingly, to the extent the agreement compels the "wholesale waiver" of representative PAGA claims, the waiver does not preclude enforcement of the arbitration agreement as paragraph 7 provides for any nonwaivable class, collective, or representative claim to be heard in court.

The clause in *Viking* added that, "if any 'portion' of the waiver remained valid, it would be 'enforced in arbitration.' " (*Viking, supra*, 142 S.Ct. at pp. 1916, 1925.) Similarly, here,

15

the agreement, through paragraph 3(c), specifically gives the arbitrator authority to adjudicate an individual PAGA claim. The severability clause of paragraph 10 also allows for the court or arbitrator to strike any provision of the agreement found unenforceable, including the waiver of representative PAGA actions under paragraph 7, and for the remainder of the arbitration agreement to "remain in full force and effect."

Moreover, to the extent paragraph 7 can be read to waive only nonindividual representative PAGA claims—meaning PAGA claims brought on behalf of other current or former employees— or, if the waiver were to be stricken altogether, the agreement remains enforceable because any individual PAGA claim Guzman might have still can be adjudicated through arbitration. (*Viking, supra*, 142 S.Ct. at p. 1925 [severability clause entitled employer "to compel arbitration of [employee's] individual claim"].) In any event, Guzman's complaint asserts no PAGA claims, so there is no representative claim of any type at issue.

Finally, because we do not construe paragraph 3(c) as a waiver of representative PAGA claims, but an indication of the parties' lack of consent to arbitrate nonindividual PAGA claims, the exclusion of this paragraph from the severability clause in paragraph 10 does not prohibit the severance of the agreement's *waiver* of representative PAGA claims, contrary to Guzman's contention. Nor does our finding that paragraph 7's waiver of PAGA claims is unenforceable require us also to find paragraph 3(c) unenforceable, which would render the entire agreement invalid. Rather, paragraph 3(c) ensures that, if a court were to find unenforceable the restriction of the arbitrator's authority to adjudicate class, collective, and representative claims— including nonindividual PAGA claims—the parties would not

16

be forced to arbitrate such claims, contrary to their agreement. (See, e.g., *Viking, supra*, 142 S.Ct. at p. 1918 [" 'a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so' "].)

Following the Supreme Court's decision in *Viking*—and given Guzman has not alleged any type of PAGA claim against Front Porch, and all her claims fall within the scope of the arbitration agreement—we conclude the trial court erred in denying Front Porch's motion to compel arbitration based on the agreement's inclusion of a PAGA waiver. Moreover, as Guzman does not contend on appeal that the court found the agreement was otherwise substantively unconscionable, the court's finding that the agreement was a procedurally unconscionable contract of adhesion is an insufficient basis to find the arbitration agreement unenforceable. (See, e.g., *Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165, 179 [fact that arbitration agreement is a contract of adhesion "does not render it automatically unenforceable as unconscionable"]; see also *Armendariz, supra*, 24 Cal.4th at p. 114 [procedural and substantive unconscionability " 'must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability' "].)

17

**DISPOSITION**

The order denying appellant Front Porch's motion to compel arbitration is reversed.  The trial court is directed to enter a new order requiring respondent Guzman to arbitrate her claims under the 2017 arbitration agreement.  In the interest of justice, the parties shall bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EGERTON, J.

We concur:



EDMON, P. J.



NGUYEN (KIM), J.*

---

\*      Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.