Filed 12/9/24  Hanby v. Elite Show Services CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SANDY B. HANBY,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>ELITE SHOW SERVICES, INC.,<br><br>　　Defendant and Appellant. | D081448<br><br><br>(Super. Ct. No. 37-2015-00007372-CU-OE-CTL) |

APPEAL from an order of the Superior Court of San Diego County, James A. Mangione, Judge.  Affirmed.

Gordon Rees Scully Mansukhani; Matthew G. Kleiner, Christopher B. Cato and Andrea K. Williams for Defendant and Appellant.

Blumenthal Nordrehaug Bhowmik De Blouw; Norman B. Blumenthal and Kyle R. Nordrehaugh for Plaintiff and Respondent.

Defendant Elite Show Services, Inc. (Elite) appeals an order denying its motion to compel arbitration of plaintiff Sandy B. Hanby's individual claim under the Private Attorneys General Act of 2004 (PAGA) (Lab. Code,[1] § 2698

---

[1]    All statutory references are to the Labor Code unless otherwise specified.

et seq.) and to dismiss or, alternatively, stay her non-individual PAGA claim. On appeal, citing *Viking River Cruises, Inc.* (2022) 596 U.S. 639 (*Viking River*), Elite contends that the predispute arbitration agreement between them should be interpreted as excluding Hanby's non-individual PAGA claims from arbitration and therefore only her individual PAGA claim was subject to arbitration. As explained below, we disagree and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

In 2008, Hanby became employed by Elite and signed a two-page arbitration agreement, titled "Mutual Arbitration Agreement and Class Action Waiver" (Arbitration Agreement). In particular, the Arbitration Agreement included a subdivision (d) (Subdivision (d)), which generally required arbitration of all claims that may be brought by Hanby. Subdivision (d) provided in relevant part:

> "(d) Except as otherwise prohibited by law . . . , all parties hereby agree to submit any and all claims, of any type whatsoever, to binding arbitration, including but not limited to claims arising from the employment relationship between [Elite] [and Hanby], . . . all claims based on . . . violations of public policy, . . . employment claims of any type, [and] wage claims . . . ."

Subdivision (e) of the Arbitration Agreement provided:

> "(e) All parties agree that this provision is a waiver of all rights that any party has to a civil court action and trial. All parties further agree and understand that the exclusive means of resolving any [and] all claims and disputes shall be decided by arbitration and not by a judge or jury. All parties acknowledge and mutually agree that the arbitrator has the authority to award any type of relief available under the law that could otherwise be awarded by a judge or jury."

2

Subdivision (f) of the Arbitration Agreement provided that any arbitration proceedings were to be conducted by the American Arbitration Association in accordance with its existing rules.

Importantly, subdivision (h) of the Arbitration Agreement (Subdivision (h)) provided specific exceptions to Subdivision (d)'s arbitration requirement, stating in relevant part:

> "(h) The parties further agree that the arbitrator shall not have any right or power to consolidate arbitration claims brought or held by [Hanby] into, or with, arbitration or court proceedings involving claims of any other co-employees employed by Elite, nor shall the arbitrator have the right or power to hear arbitration brought as a class action and/or multiple party suit, of any type whatsoever. . . ."

Finally, subdivision (i) of the Arbitration Agreement set forth a severance provision, stating:

> "(i) The parties expressly agree that in the event any of the subparagraphs of this Paragraph are found to be unlawful, unenforceable or against public policy, the offending subparagraph shall be deemed stricken and severed from the remaining subparagraphs of this Paragraph, which other provisions shall remain in full force and effect between the parties."

In 2014, Hanby left Elite's employment. In 2015, she filed the instant first amended complaint, alleging the following causes of action: (1) unfair competition (Bus. & Prof. Code, § 17200 et seq.); (2) failure to provide accurate itemized statements (§ 226); (3) failure to reimburse employees for required expenses (§ 2802); (4) failure to provide wages when due (§§ 201, 202, 203); and (5) violation of PAGA (§ 2698 et seq.).

In August 2015, the parties entered into a stipulation (Stipulation), agreeing to submit to binding arbitration under the Arbitration Agreement

3

Hanby's first, second, third, and fourth causes of action. The Stipulation excluded her fifth cause of action under PAGA from that arbitration, stating:

> "3. [Hanby] and [Elite] agree to stay the present action and all proceedings relating to the action, pending the completion of binding arbitration. In light of *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, [(*Iskanian*)] the parties further agree that [Hanby's] Fifth Cause of Action asserted under [PAGA] will not be submitted to arbitration, but will be stayed with this case, pending the outcome of arbitration."

Based on the Stipulation, the trial court stayed the action pending completion of binding arbitration.

In 2019, Hanby accepted Elite's offer to settle the claims that were subject to the arbitration proceedings, and the arbitrator accepted the parties' joint stipulation as his final award. Hanby subsequently moved to confirm the arbitration award and lift the stay on her PAGA claim.[2]

On September 8, 2022, Elite filed the instant motion to compel arbitration of Hanby's individual PAGA claim and dismiss, or alternatively stay litigation of, her non-individual PAGA claim. Elite argued that Hanby was required to arbitrate her individual PAGA claim pursuant to the Arbitration Agreement and, pursuant to *Viking River, supra*, 596 U.S. 639, her non-individual PAGA claim must be dismissed or, alternatively, stayed pending arbitration of her individual PAGA claim. Elite also argued that it had not waived its right to require arbitration of Hanby's individual PAGA claim because the United States Supreme Court in *Viking River* had only

---

[2]     The record on appeal does not include an order confirming the arbitrator's final award on the parties' joint stipulation regarding Hanby's non-PAGA claims. For purposes of our disposition of this appeal, we will presume the trial court issued an order confirming that arbitration award.

4

recently overruled the holding in *Iskanian, supra*, 59 Cal.4th 348 prohibiting the division of individual PAGA claims and non-individual PAGA claims to allow arbitration of only individual PAGA claims. Elite argued *Viking River* therefore allowed it to now divide Hanby's PAGA claims and require arbitration of only her individual PAGA claim pursuant to the Arbitration Agreement.

Hanby opposed Elite's motion to compel arbitration of only her individual PAGA claim and to dismiss her non-individual PAGA claim. In particular, she argued that *Viking River* did not apply to her PAGA claims because, unlike the arbitration agreement in *Viking River*, the Arbitration Agreement did not include a provision waiving her right to bring PAGA or other representative claims. She also argued that the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) did not apply to her PAGA claims and, even if it did, the Arbitration Agreement required arbitration of her *entire* PAGA claim (i.e., both her *individual* PAGA claim and *non-individual* PAGA claim). Finally, she argued that even if only her individual PAGA claim were compelled to arbitration, her non-individual PAGA claim should, at most, be stayed and not dismissed as Elite requested.

In its reply, Elite argued, among other things, that the facts in *Viking River* were apposite to those in this case and therefore *Viking River*'s holding applied to require arbitration of only Hanby's individual PAGA claim and dismissal of her non-individual PAGA claim. In particular, Elite argued that, contrary to Hanby's assertion, Subdivision (h) of the Arbitration Agreement should be interpreted as excluding Hanby's non-individual PAGA claim from Subdivision (d)'s arbitration requirement.

In a supplemental brief requested by the trial court, Elite argued that Hanby's individual PAGA claim was not included in the arbitration of her

four non-PAGA claims pursuant to the Stipulation. It argued that Hanby's entire PAGA claim was stayed pursuant to the Stipulation pending arbitration of her four non-PAGA claims. It further argued that arbitration of Hanby's non-PAGA claims did not preclude her from thereafter litigating her individual PAGA claim.

In her supplemental brief, Hanby argued that her individual PAGA claim *was* included in the arbitration pursuant to the Stipulation and therefore only her non-individual PAGA claim remained to be decided. She also argued that she retained her standing to bring her non-individual PAGA claim despite the resolution of her individual PAGA claim in arbitration.

On December 2, 2022, the trial court held a hearing on Elite's motion to compel. Prior to the hearing, the court issued a tentative ruling finding that Hanby's individual PAGA and non-individual PAGA claims fell within the scope of the Arbitration Agreement and were not excluded from its arbitration requirement. At the beginning of the hearing, the court confirmed that it interpreted the Arbitration Agreement as requiring arbitration of both Hanby's individual PAGA and non-individual PAGA claims.

Elite's counsel argued that the Arbitration Agreement should be interpreted differently, citing Subdivision (h)'s exclusions from the arbitration requirement. In particular, he cited Subdivision (h)'s language stating that the arbitrator would not have the power to consolidate arbitration claims brought by Hanby with arbitration or court proceedings involving claims of other employees or to hear arbitration brought by Hanby as a class action or multi-party suit.

Hanby's counsel argued that the trial court was correct in its interpretation of the Arbitration Agreement. He argued that *Viking River*

6

did not apply here because, unlike in that case, there was no clear intent shown in the Arbitration Agreement to divide Hanby's PAGA claim into two parts. He argued that the Arbitration Agreement required arbitration of any and all claims, including Hanby's individual PAGA claim and non-individual PAGA claim. He further argued that the Arbitration Agreement did not express any waiver of a representative claim and did not even use the term "representative" in its provisions. He also argued that Subdivision (h)'s provision prohibiting consolidation of claims was inapplicable to Hanby's PAGA claim. Finally, he alternatively argued that the Stipulation expressly excluded Hanby's PAGA claim from the arbitration of her four non-PAGA claims. He argued that her PAGA claim had been pending for years and needed to be adjudicated whether in arbitration or court proceedings.

The trial court confirmed its tentative ruling and denied Elite's motion to compel. In its minute order denying Elite's motion, the court stated it found that Hanby's individual PAGA and representative (or non-individual) PAGA claims fell within the scope of the Arbitration Agreement. The court further found that those PAGA claims were not included within the Arbitration Agreement's provision waiving arbitration for class actions and multiple party suits (i.e., Subdivision (h)). The court concluded: "Therefore, the Court cannot compel arbitration of [Hanby's] individual PAGA claims but deny arbitration of [her] representative [i.e., non-individual] PAGA claims." Elite timely filed a notice of appeal challenging the court's order.

DISCUSSION

I

*Arbitration Agreements Generally*

The fundamental policy of both the California Arbitration Act (CAA) (Code Civ. Proc., § 1280 et seq.) and the FAA (9 U.S.C. § 1 et seq.) is to ensure that arbitration agreements will be enforced in accordance with their terms. (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 59 (*Avery*).) The FAA applies to contracts that involve interstate commerce. (9 U.S.C. § 1; *Barrera v. Apple American Group LLC* (2023) 95 Cal.App.5th 63, 76.) If a contract does not involve interstate commerce, it nevertheless remains subject to the CAA. (Code Civ. Proc., § 1281 ["A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract."]; *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 97–98 [CAA compels enforcement of valid arbitration agreements].)

Section 2 of the FAA provides in relevant part: "A written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) "Arbitration . . . is a matter of consent . . . ." (*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University* (1989) 489 U.S. 468, 479.)

"Although the FAA preempts any state law that stands as an obstacle to its objective of enforcing arbitration agreements according to their terms, . . . we apply general California contract law to determine whether the parties formed a valid agreement to arbitrate their dispute." (*Avery, supra,*

218 Cal.App.4th at pp. 59–60.) "General contract law principles include that '[t]he basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting. [Citations.] . . . "The words of a contract are to be understood in their ordinary and popular sense." ' [Citation.] Furthermore, ' "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." [Citation.]' [Citation.]" (*Franco v. Greystone Ridge Condominium* (2019) 39 Cal.App.5th 221, 227 (*Franco*).)

The terms of a specific arbitration provision in a contract must reasonably include the dispute for which arbitration is requested. (*Ahern v. Asset Management Consultants, Inc.* (2022) 74 Cal.App.5th 675, 688.) A party cannot be required to submit to arbitration any dispute which he or she has not agreed to so submit. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Dev. (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle Museum*).) Finally, under the FAA, where parties enter into an agreement to arbitrate certain future disputes, any "ambiguities about the scope of [that] arbitration agreement must be resolved in favor of arbitration." (*Lamps Plus, Inc. v. Varela* (2019) 587 U.S. 176, 189.) The party seeking arbitration of a dispute bears the burden of proving the existence of an arbitration agreement requiring arbitration of that dispute. (*Pinnacle Museum*, at p. 236.)

On appeal, where the evidence is not in conflict, we review a trial court's order denying arbitration of a dispute under an arbitration agreement de novo as a matter of law. (*Pinnacle Museum, supra*, 55 Cal.4th at p. 236.)

## II

### *Agreements to Arbitrate PAGA Claims Generally*

*PAGA*. PAGA authorizes any "aggrieved employee" to initiate a civil action against a former employer "on behalf of himself or herself and other

9

current or former employees" to recover civil penalties for violations of the Labor Code "assessed and collected by the Labor and Workforce Development Agency [(LWDA)]." (§ 2699, subd. (a).)

## A

"An employee suing under PAGA 'does so as the proxy or agent of the state's labor law enforcement agencies.' [Citation.] . . . Moreover, the civil penalties a PAGA plaintiff may recover on the state's behalf are distinct from the statutory damages or penalties that may be available to employees suing for individual violations. [Citation.] Relief under PAGA is designed primarily to benefit the general public, not the party bringing the action. [Citation.] 'A PAGA representative action is therefore a type of qui tam action,' conforming to all 'traditional criteria, except that a portion of the penalty goes not only to the citizen bringing the suit but to all employees affected by the Labor Code violation.' [Citation.] The 'government entity on whose behalf the plaintiff files suit is always the real party in interest.' " (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 81 (*Kim*), italics omitted.)

## B

*Iskanian.* In 2014, the California Supreme Court held in *Iskanian* that predispute arbitration agreements are unenforceable to the extent that they include waivers of an employee's right to make PAGA claims on behalf of the employee and/or other employees. (*Iskanian, supra*, 59 Cal.4th at pp. 383–384, 387.) The court stated: "[A]n arbitration agreement requiring an employee as a condition of employment to give up the right to bring representative PAGA actions in any forum is contrary to public policy." (*Id.* at p. 360.) In particular, the court explained that PAGA claims are actually claims of the state (i.e., LWDA) and that an aggrieved employee is given the

10

statutory right to pursue PAGA claims for civil penalties as the state's agent or proxy against his or her employer. (*Id*. at pp. 380, 386–387.) Although the arbitration agreement in *Iskanian* could be interpreted "as requiring arbitration of individual claims but not of representative PAGA claims," the court noted that neither party contemplated bifurcation of those claims. (*Id*. at p. 391.) Accordingly, the court held that the employee was required to arbitrate his individual damages claims and the employer was required to "answer the representative PAGA claims *in some forum*." (*Ibid*., italics added.) *Iskanian* then concluded: "The arbitration agreement gives us no basis to assume that the parties would prefer to resolve a representative PAGA claim through arbitration." (*Ibid*.) The court stated that on remand the parties could agree on a single forum to resolve both the PAGA claim and other claims or, if not, address the question of whether it would be appropriate to bifurcate the claims with individual claims going to arbitration and the representative PAGA claims to litigation. (*Id*. at pp. 391–392.) Subsequently, courts have concluded that *Iskanian* included a secondary holding that an employer cannot split PAGA claims between individual PAGA claims and non-individual PAGA claims and require arbitration of only the individual PAGA claims. (See, e.g., *Kim, supra*, 9 Cal.5th at p. 88; *Perez v. U-Haul Co. of California* (2016) 3 Cal.App.5th 408, 420–421; *Williams v. Superior Court* (2015) 237 Cal.App.4th 642, 649.)

*Viking River*. In 2022, in *Viking River*, the United States Supreme Court upheld *Iskanian*'s primary holding that predispute arbitration agreements cannot waive an employee's right to bring PAGA claims, whether individual PAGA claims or non-individual PAGA claims. (*Viking River*, *supra*, 596 U.S. at pp. 656, 663.) However, *Viking River* overruled *Iskanian*'s

11

secondary holding that precluded division of PAGA claims into individual and non-individual PAGA claims in arbitration agreements. (*Id*. at p. 622.)

In *Viking River*, the court stated: "PAGA actions are 'representative' in that they are brought by employees acting as representatives—that is, as agents or proxies—of the State." (*Viking River*, *supra*, 596 U.S. at p. 648.) In that sense, "every PAGA claim is asserted in a representative capacity." (*Ibid*.) Yet, in another sense, some PAGA claims are "representative" in that they are brought by one employee to recover civil penalties for Labor Code violations committed against other employees. (*Ibid*.) Under the arbitration agreement in *Viking River*, the employee waived the right to bring a class, collective, or representative PAGA claim. (*Id*. at p. 647.) The agreement also contained a severability clause, providing that if its PAGA waiver was found to be invalid, any class, collective, or representative PAGA claim would be litigated in court and the remainder of its provisions would remain valid and be enforced in arbitration. (*Ibid*.) Therefore, *Viking River* held that the employee's individual PAGA claim was subject to arbitration and, under its understanding of California law, the employee thereafter lacked standing to assert a non-individual PAGA claim and that claim must be dismissed. (*Id*. at pp. 662–663.)

*Adolph*. In *Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104 (*Adolph*), the California Supreme Court recognized *Viking River*'s holding that *Iskanian* remained valid under the FAA to the extent it held that waivers of PAGA claims in arbitration agreements were contrary to public policy and therefore unenforceable under state law. (*Id*. at p. 1118.) *Adolph* also recognized *Viking River*'s additional holding that the FAA preempted a state law rule that PAGA claims cannot be divided into individual and non-individual PAGA claims. (*Id*. at pp. 1118–1119.) However, contrary to

12

*Viking River's* conclusion, *Adolph* held that California law provides that an employee retains his or her standing to assert non-individual PAGA claims even if his or her individual PAGA claims were required to be arbitrated if that employee is an "aggrieved employee" under PAGA. (*Id.* at pp. 1114, 1123, 1128.) The arbitration agreement in *Adolph* was similar to the arbitration agreement in *Viking River* in that it prohibited the employee from bringing a PAGA representative action, but included a severability clause providing for arbitration of all enforceable provisions (including arbitration of individual claims) and litigation in court of any PAGA representative claims. (*Id.* at p. 1115.) In reversing the judgment below and remanding, *Adolph* did not express any opinion regarding how the arbitration agreement in its case should be interpreted. (*Id.* at pp. 1128–1129.)

## III

### *Trial Court's Interpretation of the Arbitration Agreement*

Elite contends that the trial court erred by interpreting the Arbitration Agreement as requiring arbitration of both Hanby's individual PAGA and non-individual PAGA claims and, based thereon, denying its motion to compel arbitration of only her individual PAGA claim. We disagree.

### A

At the outset, we must first determine which standard of review applies on appeal in determining whether the trial court correctly interpreted the Arbitration Agreement. Here, the parties have not cited, and we are unaware of, any extrinsic evidence that was submitted by the parties below regarding the meaning of the Arbitration Agreement. Rather, the parties below simply disagreed on how the plain language of the Arbitration Agreement should be interpreted. Elite therefore argues that we should apply the de novo standard in reviewing the trial court's interpretation of the

13

Arbitration Agreement. We agree with Elite and apply the de novo, or independent, standard in reviewing the court's interpretation of the Arbitration Agreement and are therefore not bound by its interpretation.[3] (*Mitri v. Arnel Management Co.* (2007) 157 Cal.App.4th 1164, 1169–1170; *Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 684.)

B

In determining whether the Arbitration Agreement requires arbitration of both Hanby's individual PAGA claim and non-individual PAGA claim, we look first to Subdivision (d), which set forth the parties' agreement that "any and all claims" are subject to arbitration. As discussed above, Subdivision (d) provided in relevant part:

> "(d) Except as otherwise prohibited by law . . . , all parties hereby agree to submit *any and all claims, of any type whatsoever, to binding arbitration*, including but not limited to claims arising from the employment relationship between [Elite] [and Hanby], . . . all claims based on . . . violations of public policy, . . . employment claims of any type, [and] wage claims . . . ." (Italics added.)

The language "any and all claims, of any type whatsoever," must be interpreted in their ordinary and popular sense. (*Franco, supra,*

---

[3] Elite also argues that the FAA applies to require enforcement of the Arbitration Agreement because Hanby's employment involved interstate commerce. Hanby, in turn argued below and argues on appeal, that the FAA does not apply, but, in any event, argues on appeal that the trial court correctly denied Elite's motion to compel. In determining how to properly interpret the Arbitration Agreement, we need not, and do not, decide whether the FAA applies here. Both the FAA and CAA support the enforcement of parties' agreements to arbitrate their disputes. (*Avery, supra,* 218 Cal.App.4th at p. 59.) Therefore, to dispose of this appeal, we simply need to determine how the Arbitration Agreement should be interpreted in regard to Hanby's individual and non-individual PAGA claims.

14

39 Cal.App.5th at p. 227.) In so interpreting that language, we conclude that Subdivision (d) is a plain and unambiguous expression setting forth the parties' mutual intent that *all* claims, regardless of type, are subject to arbitration (unless prohibited by law). We further conclude, and Elite does not dispute, that Hanby's PAGA claims, both individual and non-individual, are a type of claim that Hanby could bring as an employee or former employee against it. Specifically, as a former employee of Elite, Hanby could allege, as she did in the fifth cause of action of her amended complaint, that she is an aggrieved employee, and bring a PAGA claim, as the proxy or agent of LWDA, against Elite for violations of the Labor Code committed against her as well as against other employees. The plain language "any and all claims, of any type whatsoever," is sufficient, in and of itself, to support our interpretation that Subdivision (d) includes Hanby's individual and non-individual PAGA claims against Elite.

In addition, we note that there is other language in Subdivision (d) that provides further support for our interpretation. Specifically, Subdivision (d) specifies that, among other claims, the parties agree to arbitrate "claims arising from the employment relationship" between Elite and Hanby, which presumably would include a PAGA claim for violations of the Labor Code committed against Hanby and/or other employees, "all claims based on . . . violations of public policy," which clearly includes PAGA claims, and "employment claims of any type, [and] wage claims," which also clearly includes PAGA claims. Therefore, the language of Subdivision (d), when considered as a whole, must be interpreted as requiring arbitration of Hanby's individual and non-individual PAGA claims, unless otherwise prohibited by law.

15

We further conclude that subdivision (e) of the Arbitration Agreement provides additional support for our interpretation of Subdivision (d), stating in relevant part:

> "(e) . . . All parties further agree and understand that the exclusive means of resolving *any* [and] *all claims and disputes shall be decided by arbitration* and not by a judge or jury. All parties acknowledge and mutually agree that *the arbitrator has the authority to award any type of relief available under the law* that could otherwise be awarded by a judge or jury." (Italics added.)

The import of the above italicized language is that it not only reinforced Subdivision (d)'s language requiring any and all claims to be decided by arbitration, but also expressed the parties' mutual intent that the arbitrator would have the authority to award any type of relief available under the law, which presumably would include civil penalties that could be awarded under PAGA for any violations committed by Elite against Hanby and/or other employees.

C

In arguing that only Hanby's individual PAGA claim, and not her non-individual PAGA claim, is subject to arbitration pursuant to the Arbitration Agreement, Elite relies solely on the language of Subdivision (h), which set forth certain exceptions to the arbitrator's power. Subdivision (h) provided in relevant part:

> "(h) The parties further agree that the arbitrator *shall not have any right or power to consolidate arbitration claims brought or held by* [Hanby] *into, or with, arbitration or court proceedings involving claims of any other co-employees* employed by Elite, *nor shall the arbitrator have the right or power to hear arbitration brought as a class action and/or multiple party suit*, of any type whatsoever. . . ." (Italics added.)

16

In arguing that the Arbitration Agreement excluded Hanby's non-individual PAGA claim from its arbitration requirement, Elite primarily relies on Subdivision (h)'s language stating that the arbitrator "shall not have any right or power to consolidate arbitration claims brought or held by [Hanby] into, or with, arbitration or court proceedings involving claims of any other co-employees employed by Elite." Elite argues, in a conclusory manner, that this "consolidation" language in Subdivision (h) covered Hanby's non-individual PAGA claim because such a claim is brought on behalf of other employees. However, in so arguing, Elite ignores the plain and ordinary meaning of Subdivision (h)'s language. (*Franco*, *supra*, 39 Cal.App.5th at p. 227.) First, Subdivision (h)'s consolidation provision began with a description of claims that may brought by Hanby, i.e., "claims brought or held by [Hanby]." Second, Subdivision (h) stated that an arbitrator had no right or power to consolidate Hanby's claims "into, or with, arbitration or court proceedings involving claims of any other co-employees." In arguing that Subdivision (h) excludes Hanby's non-individual PAGA claim from arbitration, Elite implicitly, if not expressly, argues that Hanby's non-individual PAGA claim falls within the second part of the consolidation provision and not within its first part (which references Hanby's claims). We disagree.

Under Subdivision (h)'s consolidation provision, we conclude that Hanby's non-individual PAGA claim falls within its description of "claims brought or held by [Hanby]." Hanby's fifth cause of action for PAGA violations alleged that Elite had committed certain Labor Code violations against her and other employees and that she brought her PAGA claim for civil penalties against Elite as the state's proxy or agent on behalf of herself and those other employees. In so alleging, Hanby properly described her

17

statutory authority to act as the proxy or agent of the state (i.e., LWDA), which is the real party in interest with the prime authority to bring PAGA actions against employers for violations of the Labor Code. (§ 2699, subd. (a); *Kim*, *supra*, 9 Cal.5th at p. 81 [employee suing under PAGA does so as proxy or agent of LWDA].) As discussed above, the civil penalties a PAGA plaintiff may recover on the state's behalf are primarily designed to benefit the general public and are therefore distinct from the statutory damages or penalties that may be available to employees suing for individual violations. (*Ibid*.) Given the capacity in which Hanby brought her PAGA claim and the civil penalties she sought against Elite that would primarily benefit the general public, we conclude that Hanby's individual PAGA claim and non-individual PAGA claim were, in effect, merely two parts of her whole PAGA claim against Elite. The first part of that claim was for civil penalties relating to Elite's alleged Labor Code violations against Hanby herself, while the second part was for civil penalties relating to its alleged Labor Code violations against other employees. Together, her PAGA claim sought civil penalties for Elite's alleged Labor Code violations committed against Hanby and other employees. Therefore, Hanby's fifth cause of action constituted one comprehensive PAGA claim, as proxy or agent of LWDA, against Elite for alleged violations of the Labor Code. As such, it necessarily fell within the plain and ordinary language of the first part of Subdivision (h)'s consolidation provision (i.e., "claims brought or held by [Hanby]").

Furthermore, given the capacity in which Hanby brought her PAGA claim and the civil penalties she sought against Elite to primarily benefit the general public, we also conclude, contrary to Elite's argument, that her non-individual PAGA claims for Elite's alleged Labor Code violations against other employees did *not* constitute "claims of any other co-employees" within

18

the meaning of Subdivision (h). Because Hanby brought her PAGA claim as the proxy or agent of LWDA for Elite's alleged violations of the Labor Code committed against both her and other employees, those other employees cannot under PAGA be considered to have themselves made claims within the meaning of Subdivision (h). Specifically, only *Hanby* (as LWDA's proxy or agent) has made a PAGA claim for civil penalties for Elite's alleged violations of the Labor Code committed against those other employees and, in so doing, those other employees cannot be considered under PAGA or Subdivision (h) to have made claims against Elite themselves. Accordingly, the only reasonable interpretation of Subdivision (h)'s consolidation provision is that it does not apply to exclude Hanby's non-individual PAGA claim from Subdivision (d)'s arbitration requirement.

Elite also argues, in a conclusory manner, that Subdivision (h)'s language, which provided that the arbitrator shall have no right or power to hear arbitration brought as a "class action and/or multiple party suit, of any type whatsoever," necessarily excluded Hanby's non-individual PAGA claim from arbitration. In so arguing, Elite fails to explain how Hanby's non-individual PAGA claim could be considered a class action or multiple party suit. To the contrary, as *Viking River* discussed, a class action is distinguishable from a non-individual PAGA claim. (*Viking River*, *supra*, 596 U.S. at pp. 654–655.) For example, in a class action the lead plaintiff acts as the representative of a class of members, each of whom has an individual claim for damages against the defendant. (*Id.* at p. 655.) Unlike the lead plaintiff in a class action, a plaintiff who alleges a non-individual PAGA claim for civil penalties acts, as discussed above, as the proxy or agent of LWDA for violations of the Labor Code committed by an employer against other employees. (*Ibid.*)

19

Likewise, contrary to Elite's assertion, a non-individual PAGA claim does not involve a "multiple party suit" within the meaning of Subdivision (h). Rather, as discussed above, Hanby acts as the proxy or agent of LWDA in making a non-individual PAGA claim for civil penalties against Elite for alleged violations it committed against other employees. Therefore, a non-individual PAGA claim has, in effect, only two parties—Hanby, who as the plaintiff acts as LWDA's proxy or agent, and Elite, which is the defendant. Accordingly, Hanby's non-individual PAGA claim is not a "multiple party suit" within the meaning of Subdivision (h), but is, in effect, a bilateral action, albeit one that involves allegations of Labor Code violations committed by Elite against employees other than Hanby.

Based on our reasoning above, we conclude that the trial court correctly found that both Hanby's individual PAGA and non-individual PAGA claims were not excluded from arbitration under Subdivision (h) of the Arbitration Agreement and therefore were required to be arbitrated pursuant to Subdivision (d) of the Arbitration Agreement.[4]

D

In light of our interpretation of the Arbitration Agreement as requiring arbitration of both Hanby's individual PAGA and non-individual PAGA claims, Elite's argument that *Viking River* applies to require arbitration of only Hanby's individual PAGA claim fails because it is based on the faulty

---

[4] Because we dispose of this appeal based on our interpretation of the clear and plain meaning of the Arbitration Agreement, we need not, and do not, address Hanby's alternative arguments in support of the trial court's order denying Elite's motion to compel, such as her argument that the order should be affirmed because the Stipulation excluded both Hanby's individual PAGA and non-individual PAGA claim from the arbitration of her four non-PAGA causes of action.

premise that Subdivision (h) of the Arbitration Agreement excluded Hanby's non-individual PAGA claim from Subdivision (d)'s arbitration requirement. Unlike the Arbitration Agreement in this case, the arbitration agreement in *Viking River* expressly included a waiver by the employee of the right to bring a representative PAGA claim. (*Viking River*, *supra*, 596 U.S. at p. 647.) That agreement also contained a severability clause, providing that if its PAGA waiver was found to be invalid, any representative PAGA claim would be litigated in court and the remainder of its provisions would remain valid and be enforced in arbitration. (*Ibid.*) Therefore, *Viking River* held that under the language of its arbitration agreement and in light of its overruling of *Iskanian*'s secondary holding (as discussed above), only the employee's individual PAGA claim was subject to arbitration and, in so holding, implicitly concluded that the employee's non-individual PAGA claim was not arbitrable and must be dismissed because, under its understanding of California law, the employee thereafter lacked standing to assert a non-individual PAGA claim. (*Id.* at pp. 662–663.)

E

Finally, although neither party addresses the issue, we briefly discuss Subdivision (d)'s exclusion from arbitration of those claims for which arbitration is prohibited by law (i.e., "[e]xcept as otherwise prohibited by law"). The parties do not cite, and we are unaware of, any statute or case law that prohibits the arbitration of non-individual PAGA claims. Rather, if the parties to an arbitration agreement provide for the arbitration of non-individual PAGA claims, the general policy of favoring arbitration and enforcing the clear terms of the parties' arbitration agreement support a conclusion that those non-individual PAGA claims are not contrary to, or prohibited by, law and should therefore be arbitrated. (*Avery, supra*,

21

218 Cal.App.4th at p. 59.) Furthermore, it would be logically inconsistent to allow Hanby, as LWDA's proxy or agent, to arbitrate her individual PAGA claim pursuant to the Arbitration Agreement, but then deny Hanby, as LWDA's proxy or agent, the right to arbitrate her non-individual PAGA claim pursuant to the Arbitration Agreement. Alternatively stated, because employees are permitted to agree to arbitrate their individual PAGA claims as LWDA's proxy or agent (see, e.g., *Viking River*, *supra*, 596 U.S. at pp. 662–663), they should also be permitted to agree to arbitrate their non-individual PAGA claims as LWDA's proxy or agent. We are not aware of any public policy that would require different treatment of agreements to arbitrate non-individual PAGA claims.

Although we are unaware of any case that directly addresses this issue, we note that *Iskanian* appeared to support arbitration of non-individual PAGA claims. In *Iskanian*, the court held that the employer would be required to "answer the representative PAGA claims *in some forum*." (*Iskanian*, *supra*, 59 Cal.4th at p. 391, italics added.) By using the phrase "in some forum," we infer that the court understood that the plaintiff's non-individual PAGA claim could resolved either in arbitration or court proceedings and thereby recognized the arbitrability of non-individual PAGA claims. (*Ibid*.) *Iskanian* also implicitly recognized the arbitrability of non-individual PAGA claims when it stated that on remand the parties could agree on a "single forum" to resolve both the PAGA claims and other claims, which "single forum" presumably could be either arbitration or court proceedings. (*Id*. at pp. 391–392.)

Furthermore, we note that a post-*Iskanian* federal case includes language that appears to support arbitration of non-individual PAGA claims. In *Sakkab v. Luxotica Retail North America, Inc.* (9th Cir. 2015) 803 F.3d 425

22

(*Sakkab*), the Ninth Circuit Court of Appeals stated: "*Iskanian* expresses no preference regarding whether individual PAGA claims are litigated or arbitrated. It provides only that representative PAGA claims may not be waived outright. [Citation.] The *Iskanian* rule *does not prohibit the arbitration of any type of claim*." (*Sakkab*, at p. 434, italics added.) Importantly, the court stated (albeit in possible dictum): "Nothing prevents parties from agreeing to use informal procedures to arbitrate representative PAGA claims." (*Id*. at p. 436.) In that context, *Sakkab* presumably was referring to non-individual PAGA claims because in the preceding paragraph the court referred to "representative" PAGA claims as those "claims for penalties arising out of violations against other employees." (*Ibid*.) Therefore, *Sakkab* supports a conclusion that private parties may agree to arbitrate both individual PAGA claims and non-individual PAGA claims.

Based on our reasoning above, we conclude that Subdivision (d)'s language excluding from its provisions arbitration of any claims "prohibited by law" does not apply to Hanby's non-individual PAGA claim (or individual PAGA claim). Therefore, the trial court correctly concluded that Subdivision (d) required arbitration of both Hanby's individual PAGA and non-individual PAGA claims. Because Elite's motion to compel sought arbitration of only Hanby's individual PAGA claim and sought to dismiss (or alternatively stay), and not arbitrate, her non-individual PAGA claim, we conclude that the trial court correctly denied its motion.

DISPOSITION

The order is affirmed.  Respondent shall recover her costs on appeal.

HUFFMAN, Acting P. J.

WE CONCUR:


KELETY, J.


RUBIN, J.